THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* HYMAN SOBEL, Defendant.

City Magistrate's Court of New York, Borough of Manhattan, Municipal Term Court, May 1, 1950.

*John P. McGrath, Corporation Counsel (Bernice Rogers* of counsel), for plaintiff.

*Henry A. Bruder* for defendant

McKEAN, M. An inspector for the department of licenses of the city of New York, one, Philip Meltzer, testified he inspected the defendant's premises on March 16, 1950, at 77 Greene Street, Manhattan, New York, and found about thirty burlap bags of woolen clippings and saw sorting tables in a loft about one hundred feet by thirty feet. In weight the clippings he saw weighed between 200 and 300 pounds, and the size of these clippings was, in width, from ¼ inch to 1½ inches, and in length, from ½ inch to 4 inches. There was further testimony to show that the defendant did not have a junk dealer's license as a dealer in rags, as required by section B32–114.0 of the Administrative Code of the City of New York.

The testimony showed that the defendant purchases woolen clippings from clothing manufacturers, then sorts them, bales them, and sells them to other dealers in woolen clippings. These dealers, in turn, sell the clippings to mills and eventually they find their way back into bolts of cloth as reprocessed wool.

The defendant testified that these clippings are from virgin woolens and that they are " new " woolen clippings in that after the clothing manufacturer cuts out garments from new woolen cloth the defendant is the first party to purchase the discarded pieces.

The issue is whether a dealer in new woolen clippings comes within the purview of section B32–114.0 of the Administrative Code requiring him to procure a license as a junk dealer and as a dealer in rags.

Section B32–114.0 of the Administrative Code of the City of New York, provides: " a. It shall be unlawful for any person to act as a junk dealer without a license therefor   *   *   *."

Section B32–113.0 of the Administrative Code of the City of New York, provides:

" *Definitions.*— Whenever used in this article the following terms shall mean:

" 1. ' Junk Dealer '. Any person engaged in the business of purchasing or selling junk, old rope, old iron, brass, copper, tin, lead, rubber, paper, rags, bagging, slush or empty bottles.

" 2. 'Junk Shop '. The place of business of a junk dealer * * * ."

The courts have already ruled that woolen clippings, whether new or old, are to be considered as rags. The facts in the two following cases involved clippings from new cloth. (*United States* v. *Pearson & Emmott,* 131 F. 571, 572 [1904], affd. 137 F. 1021.) Also, *Tenement House Dept. of City of New York* v. *Hutkoff* (149 N. Y. S. 457 [1914]).

The leading case on the subject appears to be *People* v. *American Wool Stock Corp.* (286 N. Y..77) decided in 1941, which held that persons who are engaged in the business of grading and sorting new and used wool material which they sold in bulk lots to wool mills, are engaged in the business of purchasing or selling rags within the statutory definition of a junk dealer (Administrative Code, § B32–113.0) and were required to have a junk dealer's license.

In the *American Wool Stock* case Judge Lewis said (p. 80): " Of the total quantity of materials purchased by the defendant American Wool Stock Corporation, twenty-five per cent are new wool ' clips ' — small waste pieces from the cutting tables of manufacturers of sweaters, men's clothes and women's garments; and seventy-five per cent are ' old ' woolen materials purchased from wholesale junk dealers. Of the materials dealt in by the defendant B. D. Kaplan & Co., Inc., sixty per cent are new wool ' clips ' and forty per cent are ' old ' wool materials acquired from like sources."

The court, in the *American Wool Stock* case, said (p. 82): " We also conclude that the word ' rags ' as used in the statutory definition of a junk dealer (Admin. Code, ch. 32, art. 18, § 32–113.0) includes the commodity dealt in by the defendants."

The reason for the statute is clearly set forth in the *American Wool Stock Corporation* case, the Court of Appeals saying (pp. 79–80): " Experience has taught that the various types of property dealt in by a junk dealer are peculiarly susceptible to theft and that the business of junk dealers, which provides a market for stolen property, is of a character which warrants

regulation in the exercise of police power. Regulatory statutes enacted to that end have successfully withstood attacks as to their constitutionality."

This court feels that the intention of the legislative body should be examined in construing any statute.

Prior to 1939, article 18 of the Administrative Code of the City of New York contained section B32–125.0, which provided: " *Exemption.*— Any person exclusively engaged in the purchase and sale of large quantities of scrap iron and steel, or woolen rags, or paper stock, shall file annually with the police commissioner and commissioner of licenses, a statement in writing, setting forth his name and address and the character of his business. Upon filing such statement, such person shall be exempt from the other provisions of this article."

This exemption was repealed by action of the city council on April 3, 1939 (Local Laws, 1939, No. 96 of City of New York which became a law June 23, 1939, with the approval of the Mayor). Prior to the repeal of the section by the council its committee on general welfare made the following report:

" The purpose of this bill is to require all junk dealers doing business in the City to be licensed. Under the present provisions of the code certain dealers are exempt from the licensing provisions.

" Your Committee feels that one group of business men should not be discriminated against for the benefit of any other group, and accordingly presents this bill for adoption." (G. O. No. 155 [No. 144] C. No. 415, Proceedings of the City Council, Vol. 1, pp. 695, 777, Jan. 2, 1939, to June 27, 1939.)

Webster's New International Dictionary defines " junk " as " old iron, glass, paper, cordage, or other waste or discarded material which may be treated or prepared so as to be used again in some form."

The same dictionary defines " Rag " as " A waste piece of cloth torn or cut off; a tattered piece of cloth; a shred; tatter."

This court considers clippings from the manufacture of new garments waste or discarded material and therefore " rags " within the purview of section B32–113.0 of the Administrative Code.

The motion to dismiss the information is denied, exception to the defendant; the defendant is found guilty.