Burke, J.
The Commissioner of Licenses appeals, pursuant to permission, from a unanimous affirmance by the Appellate Division of an order of Special Term directing him to issue a junk license.
The petitioner applied for a license to conduct business as a junk dealer at 122-52 Montauk Street, Springfield Gardens, Long Island, New York. The records of the Department of Licenses indicate that the neighborhood ‘ ‘ is vacant land, predominantly residential in character except for two places of business ”. However, the City Planning Commission had designated this area as an unrestricted use district, and the Borough Superintendent of Queens issued a certificate of occupancy. *158 After a hearing, pursuant to the Administrative Code of the City of New York (§ 773a-7.0, subd. c), the application for a license was denied by the Commissioner of Licenses. The Commissioner stated that he was bound by neither the zoning designation nor the issuance of the certificate of occupancy. Both the findings of the trial court and the record before us indicate that the sole basis for the denial is the alleged harm the junk business would work on this predominantly residential area.
Since there is no question as to the petitioner’s compliance with the preliminary and formal requirements of the statute, the single issue to be determined is: whether the denial on the ground above stated is within the ambit of legislatively delegated discretion. We are not here concerned with whether the Legisture could grant such power, but solely whether they did in fact delegate this power to the Commissioner of Licenses.
The Commissioner contends that since “ [c]ontrol of the location of a junk yard is an appropriate means of protecting public health, safety and welfare ”, he can, in the exercise of his discretion, deny a license, regardless of a zoning designation to the contrary. We believe this attempt to exercise a general power is in excess of the authority intended to be conferred.
It is well settled that regulation of junk dealers is a valid exercise of the police power of the State (People v. American Wool Stock Corp., 286 N. Y. 77). The Legislature, of course, may directly or indirectly (e.g., via the municipality) bestow this power upon one administrative officer or tribunal, or in varying degrees, to separate administrative bodies (e.g., Commissioner of Licenses and City Planning Commission). Pursuant to such delegation the New York City Charter provides generally that: “ The commissioner shall have cognizance and control of the granting, issuing, transferring, renewing, revoking, suspending and cancelling of all licenses and permits, except in the cases with respect to which and to the extent to which any of said powers are conferred upon any other person by law, but including all licenses heretofore issued by the board of aldermen” (§ 773). In addition, the Administrative Code of the City of New York specifically requires, inter alia, that junk dealers be licensed, bonded and bound by certain restrictions (ch. 32, art. 18, §§ B32-113.0 — B32-124.0).
*159 Since a practical modus operandi is often difficult to achieve, as well as unnecessarily cumbersome and inflexible, the Administrative Code, as in the situation now before us, quite often avoids any meticulously worded or scientifically calculated directions. Any such rigid declaration, even if liberally construed, might well provide unethical groups with the legal tightrope with which to span the very object of the enactment. In order, therefore, not to frustrate this very purpose, the Commissioner must be given a certain amount of leeway. While he may not act arbitrarily there is no doubt that he can use a certain degree of discretion in the exercise of the powers conferred (Matter of Rosenberg v. Moss, N. Y. L. J., Aug. 14, 1941, p. 343, col. 7 [Sup. Ct, N. Y. County], affd. 266 App. Div. 845, affd. 296 N. Y. 595). As we said in Matter of Marburg v. Cole: “ The law is well settled that it is not always necessary that license legislation prescribe a specific rule of action. Where it is difficult or impractical for the Legislature to lay down a definite, comprehensive rule, a reasonable amount of discretion may be delegated to the administrative officials.” (286 N. Y. 202, 211-212; emphasis added.)
However this is obviously not to be construed as a grant of limitless authority to provide for the health, safety and general welfare. Administrative discretion must be guided by an express or clearly implied standard, policy or purpose. Once a standard is established the courts cannot thereafter interfere with a reasonable determination within this sphere of discretion (Matter of Small v. Moss, 277 N. Y. 501; Matter of Larkin Co. v. Schwab, 242 N. Y. 330). Refusal to issue a license would, of course, be arbitrary and in excess of reasonable discretion if based solely upon a ground which the Commissioner may not consider (Matter of Small v. Moss, supra; Matter of Larkin Co. v. Schwab, supra).
In the light of the history and purpose of the regulation of junk dealers, it is obvious that a license is required in order to eliminate or at least curtail the readily available market for stolen property which this business affords (People v. American Wool Stock Corp., 286 N. Y. 77, supra; People v. Sobel, 198 Misc. 891; People v. Nierman, 190 Misc. 149; see, also, Administrative Code of City of New York, § B32-120.0 to § B32-123.0). The clear implication, therefore, is that dele *160 gated discretion was intended, in this instance, to be limited to this specific subject, i.e., to the prevention of the distribution of stolen goods. This is further substantiated by the fact that under section 200-2.0 of the Administrative Code the City Planning Commission, not the License Commissioner, is empowered to regulate and restrict the location of trades and industries. That section further states: 11 Such regulations shall be designed to promote the public health, safety and general welfare. The commission shall give reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values, and the direction of building development in accord with a well-considered plan.” (Emphasis added.)
Nowhere in the sections before us is there any indication of an intention to bestow conflicting jurisdiction to these administrative bodies. If there was such an intention the Commissioner of Licenses could then subvert the ivell-considered plan of the City Planning Commission by his mere personal finding to the contrary. While the factors available to the City Planning Commission (i.e., location, suitability, etc.) need not be disregarded by the Commissioner of Licenses, they should be considered only in their relation to the purpose for which a license is required. The record nowhere indicates this vital connection and, therefore, the refusal of the Commissioner to grant the license because of the mere objections of the residents (as to possible adverse effect upon the area) is arbitrary and in excess of authority conferred. This is purely a zoning problem and should be left to that body before whom the residents can rightfully protest in this regard. (See New York City Charter, §§ 200, 201.)
Under the present zoning law there are numerous and equally obnoxious activities (e.g., crematory, fertilizer manufacturing plant, slaughterhouse, etc.) which may be conducted in this area without the necessity of a license. It would seem absurd for us to now find a legislative intent to grant duplicating powers over a junk dealer (in re: zoning) when there are so many other objectionable activities with which the Commissioner of Licenses is powerless to deal. Although the Legislature clearly intended, under its police power, to regulate the junk business in each of its distinct aspects of public concern (i.e., zoning and prevention *161 of crime), there should be no doubt that the power to do so was divided and separately conferred.
The Commissioner cites Matter of Rosenberg v. Moss (supra) as authority for the fact that he has absolute discretion to provide generally for the health, safety and welfare of the community. The Rosenberg case (supra) is not controlling. The Commissioner there denied a license to operate a bowling alley in an area which, although residential, had been zoned for business. The applicable statute at the time stated:
‘ ‘ Bowling Alleys * * *
License required; fee; general provisions — a. It shall be unlawful to maintain a public bowling alley without a license therefor.
b. The annual license fee for each public bowling alley shall be five dollars.
c. Every keeper of a public bowling alley shall maintain good order and allow no person under sixteen years of age to bowl therein.
d. Violations. [Fine or Imprisonment].” (Administrative Code, ch. 32, tit. B, art. 7, § B32-46.0; brackets furnished.)
In addition, as today, section 773a-1.0 provided that licensees must be citizens.
The petitioner there contended that the Commissioner can inquire only into citizenship and willingness to pay the statutory fee of $5. Special Term in finding for the Commissioner held that, although not express in the statute* it is surely implied that the Commissioner is to have some discretion. On appeal, from an order of the Appellate Division affirming the order of Special Term, we affirmed without opinion. The threshold question we decided was whether the Commissioner had discretion. We concluded that he did, and that there was sufficient evidence in the record to show that such discretion was exercised within the limits delegated.
In the case at bar the Commissioner attempts to assert a general and unlimited discretion even though the applicable statute does not call for it. However salutary his ideas may be, it is beyond the scope of his authority. He may not “ arbitrarily impose limitations not contained in the statute upon his [the applicant’s] right to do business.” (Matter of Picone v. Commissioner of Licenses, 241 N. Y. 157, 161; brackets furnished.)
*162 Accordingly, the order appealed from should be affirmed, without costs.