OPINION OF THE COURT
Stuart Namm, J.
Defendant, an operator of a discotheque known as Tuey’s, is charged in one information with four separate violations of *103 the Fire Prevention Ordinance of the Code of the Town of Brookhaven. Two of the counts were dismissed at the close of the People’s case. The remaining two counts allege that "the defendant did cause one-half of an exit door to be padlocked closed [sic] while the building was occupied, and that it did cause overcrowded conditions (355 people on premises, maximum occupancy is 218 [sic]).
Section 30-42 of the aforesaid Fire Prevention Ordinance, at paragraph "D,” provides as follows: "D. All doors in or leading to required exitways shall be kept unlocked at all times when the building or floor area served thereby is occupied.”
The People offered evidence, through the testimony of the Chief Fire Inspector of the Town of Brookhaven, that in the early morning hours of July 15, 1977, when the premises were occupied by 355 persons, an exit door to the parking lot was padlocked. The defendant offered nothing to rebut this clear and unequivocal testimony. Accordingly, the defendant is found guilty of violating section 30-42 of the Code of the Town of Brookhaven.
The second and remaining charge poses a more complex problem to the court, and both sides submitted posttrial memoranda to assist the court in its deliberations.
Section 30-185 of the Fire Prevention Ordinance, at paragraph A, provides as follows: "A. This local law adopts the Fire Prevention Code of the National Fire Protection Association, NFPA No. 1, and its incorporated standards and codes as published in the National Fire Codes of the National Fire Protection Association, and listed in Annex A of the NFPA Fire Prevention Code, being particularly the 1975 Edition thereof, save and except those portions such as are hereinafter deleted, modified or amended by § 30-185C of this local law. The same are hereby adopted and incorporated as fully as if set out at length herein.”
Furthermore, the information, while charging the defendant with violations of chapter 30 of the Code of the Town of Brookhaven in the accusatory portion, factually alleges that the overcrowded conditions, as aforesaid, were "contrary to Section 5-3.1.2 NFPA Code 101.” Section 101 of the NFPA Fire Prevention Code apparently has reference to the Life Safety Code of the National Fire Protection Association, a copy of which was provided to the court at the commencement of the trial, and judicial notice of which has been taken by this court.
*104 Section 5-3.1.2 of the Life Safety Code provides in part as follows: "5-3.1.2 The occupant load shall be the maximum number of persons that may be in the space at any time, as determined by the authority having jurisdiction, but shall not be less than the number computed in accordance with the requirements of Chapters 8 through 16 for individual occupancies.” (Emphasis added.)
The parties agreed that the maximum occupancy or occupant load for the premises in question was 218 on the date of the alleged offense, as determined by the People’s witness, the Chief Fire Inspector of the town. It was further undisputed that the defendant had knowledge of this determination since March, 1975. The defendant contends, however, that such determination of occupant load was incorrect by reason of the standards set forth in the Life Safety Code, and in support of its contention, defendant offered the testimony of an expert witness who, in addition to other qualifications, serves as Assistant director of the National Fire Protection Association. It was his opinion that on January 15, 1977, the correct occupant load for the Tuey’s discotheque would have been anywhere from 475 to 500 persons. Defendant had admitted into evidence a floor plan of the premises, from which its expert drew his conclusions, and a "Code Analysis” which is a presentation of the method used by the defendant’s witness to calculate the maximum occupant load, utilizing his interpretation of the various provisions of the Life Safety Code.
"Occupant Load” is defined in the Life Safety Code as: "The total number of persons that may occupy a building or portion thereof at any one time.” The "Authority Having Jurisdiction” is defined as: "The duly authorized representative or agency having legal enforcement responsibility in cases where this Code is applied with the force of law.”
The defendant argues that the Chief Fire Inspector of the town does not have any statutory authority to compute occupant loads, and accordingly is not the "authority having jurisdiction” within the meaning of the Life Safety Code. Such argument flies in the face of logic, but more important in the face of the Brookhaven Ordinance which establishes a Department of Fire Prevention and the position of Chief Fire Inspector, and which prescribes the duties of that office, not the least important of which is to administer the Fire Prevention Ordinance of the Town of Brookhaven. (Local Laws, 1964, No. 4 of Town of Brookhaven.) The defendant would have this *105 court déclare, in effect, that only the town board can establish occupant loads for the numerous places of assembly within the confines of the town.
 It has long been an established rule that a municipality may pass such laws as it deems necessary to protect the public health, safety, welfare and interest of its citizens. (People v Passantino, 83 Misc 2d 409.) Furthermore, a municipality has the right, pursuant to its police powers, to prevent conditions dangerous to public health and welfare. (Matter of Wulfsohn v Burden, 241 NY 288; Shepard v Village of Skaneateles, 300 NY 115; and Rodgers v Village of Tarrytown, 302 NY 115.) Such right is derived from the provisions of the Constitution of the State of New York (art IX, § 2, subd [c], par [10]) which grants every local government the power to adopt local laws relating to the protection, safety, health and well-being of persons within its jurisdiction. The specific authority for a town board, sitting as a legislative body, to do so is contained in section 130 of the Town Law, which permits, inter alia, the enactment of ordinances for promoting the health, safety or general welfare of the community.
The right of a municipality to delegate part of its police powers to authorized representatives has long been recognized in .this State. (Matter of Bologno v O’Connell, 7 NY2d 155; City of Syracuse v Penny, 59 Misc 2d 818.) However, this is not to suggest that a municipality may bestow a limitless grant of authority on its representative. So long as such subordination or bestowal of power is accompanied by proper standards or guides to the exercise of discretion, the Legislature is said to be exercising a proper grant of its authority. In the instant case, as in the City of Syracuse v Penny (supra), the municipality has seen fit to incorporate in its ordinance, by reference, a national code, thereby providing some of the standards and guidelines for the exercise of discretion by the delegee of its legislative authority, the Chief Fire Inspector of the town. However, reasonable persons, be they expert or otherwise, may differ as to the interpretation and application of such standards, especially where these standards are highly complex and technical, as is the present case.
Since 1975, the defendant has apparently been aware of the establishment of an occupant load of 218 persons for its premises by the Chief Fire Inspector. It has had more than ample time to challenge that determination, if it believed the same to be incorrect under the guidelines established by the *106 Life Safety Code, arbitrary, capricious or unreasonable. Since it apparently chose not to do so, either through the courts or through the legislative authority, the town board itself, defendant would now have this court, in effect, declare that determination of the Chief Fire Inspector to be a nullity, and not enforceable by the Town of Brookhaven. That, this court neither has the jurisdiction nor the inclination to do in this proceeding.
The Life Safety Code, upon which the defendant relies so heavily in its own defense, clearly designates the "authority having jurisdiction” as the final arbiter of what measures for life safety from fire shall be deemed adequate for its own citizens. It provides, inter alia, as follows: "1-4.4 Discretionary Powers of Authority Having Jurisdiction (see also 1-4.2). The authority having jurisdiction shall determine the adequacy of exits and other measures for life safety from fire in accordance with the provisions of this Code. In cases of practical difficulty or unnecessary hardship, the authority having jurisdiction may grant exceptions from this Code, but only when it is clearly evident that reasonable safety is thereby secured.”
Nowhere does this code presume to usurp, assume or supersede the authority of the municipality whose responsibility it is to protect the health, safety and welfare of its citizens. On the contrary, it clearly recognizes the municipal responsibility to do so. Such an awesome responsibility can only be borne by the body which is answerable to the citizenry which it is bound to protect. Certainly, the municipality must look to organizations such as the National Fire Protection Association for guidance in such highly technical matters as "occupant load.” Ultimately, however, having considered the guidelines, as recognized by the draftsmen of the Life Safety Code, it is only the municipality which has the power, indeed the obligation, to adopt regulations to insure the health, safety and welfare of its citizens.
Accordingly, not having challenged the factual proof as to the number of occupants on its premises on July 15, 1977, the defendant is likewise found guilty under Count 4 of the information. The defendant shall appear for sentencing on November 25, 1977, at the First District Court, Hauppauge, New York, at 9:30 a.m., at which time a representative of the Town Attorney’s office shall also bé present.