OPINION OF THE COURT
James B. Kane, J.
Plaintiffs request this court for a judgment pursuant to CPLR article 30 declaring certain ordinances of the City of Buffalo unconstitutional on their face and as applied. Specifically, chapter 7 (§ 27, subd [9]) governing amusement arcades. After a hearing the court granted plaintiffs a preliminary injunction enjoining the defendants from taking any action to enforce said ordinances against the plaintiffs pending a final determination of this matter.
*986 In addressing this matter the court relies on the principles set forth by the New York Court of Appeals in Lighthouse Shores v Town of Islip (41 NY2d 7, 11-12): “The exceedingly strong presumption of constitutionality applies not only to enactments of the Legislature but to ordinances of municipalities as well. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort should courts strike down legislation on the ground of unconstitutionality. The ordinance may not be arbitrary. It must be reasonably related to some manifest evil which, however, need only be reasonably apprehended. It is also presumed that the legislative body has investigated and found the existence of a situation showing or indicating the need for or desirability of the ordinance, and, if any state of facts known or to be assumed, justifies the disputed measure, this court’s power of inquiry ends. Thus, as to reasonableness, plaintiffs in order to succeed have the burden of showing that ‘no reasonable basis at all’ existed for the challenged portions of the ordinance. (See Matter of Van Berkel v Power, 16 NY2d 37, 40; I. L. F. Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263, 269; Wiggins v Town of Somers, 4 NY2d 215, 218-219; Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 541.)” (See, also, Goldblatt v Hempstead, 369 US 590, 595; Town of North Hempstead v Exxon Corp., 53 NY2d 747, 749; Matter of Albert Simon, Inc. v Myerson, 36 NY2d 300, 303.)
A review of plaintiffs’ papers reveals five basic issues requiring determination.
First, is chapter 7 (§ 27, subd [9], par [a]) defining “amusement arcade” as a building or place which provides entertainment by means of coin-controlled amusement devices and which contains four or more such devices an arbitrary or capricious definition, lacking a rational basis and violative of the equal protection rights of plaintiffs? The court does not believe so.
If, as counsel for respondent contends, part of the intent of the legislation was to discourage truancy and assuming coin-controlled amusement devices are more participatory in nature than spectator oriented, a decision that only *987 those places having four or more machines needed regulation cannot be classified as unreasonable on its face. The fact that places having three or fewer coin-operated amusement devices are not subject to the regulation does not in this court’s opinion raise an equal protection problem.
Plaintiffs also assert an equal protection argument claiming other forms of “amusement” are not identically or similarly regulated. Again, the court is not persuaded. The United States Supreme Court has frequently upheld under-inclusive classifications on the sound theory that a Legislature may deal with one part of a problem without addressing all of it (Erznoznik v City of Jacksonville, 422 US 205, 215; Williamson v Lee Opt. of Oklahoma, 348 US 483, 488-489).
The second problem raised involves chapter 7 (§ 27, subd [9], par [h]). This section provides “no person under the age of sixteen (16) years shall be permitted in an amusement arcade during the school hours on any weekday that the Buffalo public schools are in session.”
Plaintiffs contend this section bears no rational relation to any legitimate public purpose (i.e., promotion of the public safety, health or welfare). Plaintiffs argue since nothing prevents those under 16 from playing a coin-operated amusement device in a place having less than four machines during public school hours and nothing prohibits a private school student under 16 from being in an “amusement arcade” on a day when his school is in session but the Buffalo public schools are not, the legislation has no rational purpose. Again, the court disagrees. Few laws aré capable of being drawn with such exactitude as to cover every situation; under-inclusive classifications have been accepted when based on a rational reason.
Here counsel for respondents contend that if the language was otherwise “amusement arcade” operators would have to determine where a child goes to school and then whether or not that school is open. A far more difficult task than checking with the Buffalo public school system calendar or central office.
*988 Plaintiffs also allege this provision infringes the First Amendment free speech or freedom of association rights of individuals under 16. Accepting plaintiffs’ allegation where there is an invasion of protected freedoms the power of the State to control the conduct of children reaches beyond the scope of its authority over adults (Ginsberg v New York, 390 US 629, 638; Prince v Massachusetts, 321 US 158, 170; Erznoznik v City of Jacksonville, supra, p 212). Where the regulation is relatively narrow and well defined and serves a significant State or public interest the infringement should be tolerated.
The third provision challenged by plaintiffs is chapter 7 (§ 27, subd [9], par [b]) which provides no coin-controlled amusement device located in an amusement arcade shall be operated or used between the hours of 11:00 p.m. and 10:00 a.m.
Inasmuch as the only purpose of the legislation advanced by defendants’ counsel was the curtailment of truancy plaintiffs correctly contend that there appears no rational relationship between the language of this provision and the asserted purpose. There are no legislative findings or history accompanying the enactment to suggest any other legitimate concerns. Nor can the court on its own perceive any manifest evil that is reduced or controlled by the terms of this provision.
The fourth area of concern is the language of chapter 7 (§ 27, subd [9], par [d]) which deals with the investigation and approval of applications for amusement arcades.
Plaintiffs contend the terms of this section are vague, arbitrary and capricious. Specifically, chapter 7 (§27, subd [9], par [d], cl [1]) provides the director of licenses shall, besides examining and investigating applications to determine if the premises complies with the applicable regulations, also determine if the person or persons making application or seeking to maintain such amusement arcade are “responsible persons.” No definition of “responsible persons” is given, so one is left to surmise if the intention is moral, social or financial responsibility.
Additionally, plaintiffs complain chapter 7 (§ 27, subd [9], par [d], cl [2]) permits the director of licenses, at his *989 discretion, to employ the full battery of investigative resources of the police, public works and fire departments in reviewing a license application, with no guideline as to when these departments are to be used or the extent of the information they should supply; furthermore the report of their investigation is to contain a recommendation as to whether a license should be granted. However, the enactment sets forth no standards to guide these departments in making their recommendations and does not require a reason or explanation for the recommendation.
Finally, in this area, plaintiffs point to chapter 7 (§27, subd [9], par [d], cl [3]) which requires the director after completing his investigation to forward each application together with his recommendation to the common council for its review and approval again with no limitations or guidelines.
Plaintiffs are correct that although a legislative body may delegate to the licensing body the power to exercise reasonable discretion with respect to the qualifications for a license that discretion must be exercised in conformity with the expressed or clearly implied standard, policy or purpose of the licensing law (Matter of Bologno v O’Connell, 7 NY2d 155, 159; Matter of Maytum v Nelson, 53 AD2d 221, 227; Matter of Employers Claim Control Serv. Corp. v Workmen’s Compensation Bd. of State of N. Y., 35 NY2d 492, 497). However, as pointed out by counsel for defendants this is not an issue since chapter 7 (§ 27, subd [9], par [d], cl [3]) retains the licensing authority in the common council.
Section 20 of the General City Law provides:
“Subject to the constitution and general laws of this state, every city is empowered: * * *
“13. To maintain order, enforce the laws, protect property and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto; and for any of said purposes to regulate and license occupations and businesses.”
It has consistently been held that when the local legislative body, which is properly authorized to act in an area, passes a licensing or zoning ordinance and retains for itself *990 the power to approve or reject an application thereunder the absence of formulated standards will not render the ordinance unconstitutional (Matter of Larkin Co. v Schwab, 242 NY 330, 334; Matter of Green Point Sav. Bank v Zoning Appeal Bd. of Town of Hempstead, 281 NY 534, 538, 540; Matter of Small v Moss, 279 NY 288, 295; Matter of Lemir Realty Corp. v Larkin, 11 NY2d 20, 26; Matter of Frederico v Moore, 57 AD2d 704; Suffolk Outdoor Adv. Co. v Hulse, 56 AD2d 365, 377). The court does note that the common council may not arbitrarily or unreasonably refuse to act on applications or deny them. Its denial cannot be based on impermissible considerations. An individual who believes the common council’s action in a specific case was unreasonable may of course petition the court to correct an arbitrary or capricious determination (Rodgers v Village of Tarrytown, 302 NY 115, 123; Arverne Bay Constr. Co. v Thatcher, 278 NY 222, 232).
The fifth and final area objected to by plaintiff is chapter 7 (§ 27, subd [9], par [e]) requiring a $75 licensing fee for every coin-controlled amusement device located in an amusement arcade.
Plaintiffs contend that the increase in fees from $30 per machine regardless of location to $75 per machine solely for those machines located in “amusement arcades” is not only discriminatory but also further reflects the penal as opposed to the rational nature of the ordinance.
Since the court has already ruled that the classification of an amusement arcade as a place having four or more coin-operated amusement devices was not unreasonable then an increased licensing fee could conceivably be justified as necessary to provide for the investigation possible under the ordinance or even increased police patrols. In any event, it is plaintiffs’ burden to show that the fee is excessive in amount and not reasonably related to the cost of administering the ordinance. Plaintiffs have not carried their burden.
Plaintiff Eric Joseph in his complaint contends that passage of the ordinance constitutes an ex post facto law, in violation of section 9 of article I of the United States Constitution. However, he does not present any evidence *991 indicating the licenses for his other 14 machines were in fact granted. Nor does he address this claim in a memorandum of law or offer citations to support this position. The term “ex post facto law” in the United States Constitution cannot be construed to include and to prohibit the enacting of any law, after a fact, nor even to prohibit the depriving a citizen of a vested right to property (Colder v Bull, 3 Dallas [US] 386, cited in Black’s Law Dictionary [4th ed]). The prohibition against ex post facto laws has usually been applied only in the criminal arena.
In light of the strong presumption of constitutionality which attaches to the legislative enactments of a municipal body the court does not feel the plaintiff has carried his burden in showing the enactment violated the above provision of the United States Constitution.
For the reasons stated above plaintiffs’ request for summary judgment is denied in all respects, and the preliminary injunction is lifted, except the court finds that chapter 7 (§ 27, subd [9], par [f]) of the ordinances of the City of Buffalo is arbitrary and not reasonably related to some manifest evil sought to be controlled and, therefore, is invalid. Pursuant to chapter 7 (§ 27, subd [9], par [e]) this determination to invalidate that provision shall not affect, impair, or invalidate the remainder of the ordinance.