**MINNEAPOLIS STAR AND TRIBUNE COMPANY, et al., Petitioners,**

v.

**Honorable John C. SCHMIDT, etc., Respondent.**

**No. C9–84–2242.**

Court of Appeals of Minnesota.

Jan. 15, 1985.

Patricia A. Hirl, Minneapolis, for petitioners.

Paula D. Osborn, St. Paul, for Northwest Publications.

Hubert H. Humphrey, III, Atty. Gen., John Galus, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Marc G. Kurzman, Minneapolis, for parents.

Wright S. Walling, Minneapolis, for guardian ad litem.

Heard, considered and decided by POPOVICH, C.J., and RANDALL and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

## FACTS

Petitioners seek a writ of prohibition striking part of a juvenile court order which forbade the news media from publishing information about a pending juvenile court matter. On December 21, 1984, the juvenile court issued an order (1) denying petitioners' motion for access to the pending proceedings, (2) denying petitioners access to juvenile court records about the pending matter, (3) forbidding the news media from publishing information about the proceeding, and (4) forbidding trial participants from discussing or releasing information about the matter to the press.

Petitioners filed a motion in this court for a writ of prohibition contesting only the third portion of the juvenile court's order, which states:

[N]o representatives of the news media shall identify in any story or any news report in any way the identities of any juvenile connected with this case, whether as a party or as a witness; nor, the identity of the Respondent parents involved in this case. That this shall include prohibition on the disclosure or identification of any such person or minor by name, residence, occupation, place of school attendance, foster placement, photographs, sketches, or any reference to previously identified characteristics.

On December 27, 1984, the juvenile court amended this provision to include "the names of all attorneys of record in this case among those persons whose identity shall not be revealed in any story or news report."

On December 28, 1984, we vacated the challenged paragraph 3 of the December 21 order and the December 27 order, with this opinion to follow in due course.

## ISSUE

May a juvenile court forbid the news media from publishing information about a pending juvenile court matter which is obtained legally from public records and independent sources?

## ANALYSIS

1. A writ of prohibition will issue when irreparable harm for which there is no adequate remedy at law would be caused by an unauthorized or illegal exercise of judicial authority. *See State v. Hartman*, 261 Minn. 314, 323, 112 N.W.2d 340, 346 (1961); *Minneapolis Star and Tribune Company v. Lee*, 353 N.W.2d 213, 214 (Minn.Ct.App.1984). A writ of prohibition will issue if a trial court issues an unconstitutional prior restraint of free speech. *Lee*, 353 N.W.2d at 215.

██ The main purpose of the first amendment guarantee of freedom of the press was "to prevent previous restraints upon publication." *Near v. State of Minnesota ex rel. Olson,* 283 U.S. 697, 713, 51 S.Ct. 625, 630, 75 L.Ed. 1357 (1931). Any prior restraint of speech is reviewed "bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963). Any exception to this fundamental principle must be "necessitated by a compelling state interest, and * * * narrowly tailored to serve that interest." *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982). Examples of compelling interests include the prevention of the release of the sailing times of troop ships during times of war and prevention of words causing incitement to overthrow the government by violent means. *See Near,* 283 U.S. at 716, 51 S.Ct. at 631.

██ 2. In this matter, the juvenile court apparently believe one of the children involved would be traumatized by further publicity. Thus, during oral argument, the defenders of the court's order asserted the potential traumatization of this child by further media exposure was a compelling state interest justifying the gag order. We disagree.

First, we do not agree with the trial court's conclusion that further publicity would seriously traumatize the affected child. Although "no media coverage of the trial" was recommended by the examining psychiatrist, a careful reading of the psychiatrist's report indicates the child's current anxiety was caused primarily by recurrent interrogation and removal from the home.

Second, the juvenile court's order was not "narrowly tailored" to protect the purported compelling interest. The court could have ordered the guardian to restrict the child's access to newspapers, radio, and television news programs. Given this simple alternative to a gag order, we do not believe the juvenile court's order would

have been appropriate under any circumstance.

██ Third, the possibility that one child's anxiety may increase because of media coverage of this proceeding does not rise to the level of a compelling state interest justifying a restraint on the publication of information obtained from public records and independent sources.

By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby served. Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media. The freedom of the press to publish that information appears to us to be of critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business. In preserving that form of government the First and Fourteenth Amendments command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection. *Cox Broadcasting Corporation v. Cohn,* 420 U.S. 469, 495, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328 (1975) (involving publication of the name of a rape victim). Once truthful information is publicly revealed or in the public domain, a court may not "constitutionally restrain its dissemination." *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 103, 99 S.Ct. 2667, 2671, 61 L.Ed.2d 399 (1979); *see Oklahoma Publishing Company v. District Court,* 430 U.S. 308, 309–12, 97 S.Ct. 1045, 1046–47, 51 L.Ed.2d 355 (1977); *Lee,* 353 N.W.2d at 215.

In *Smith,* the United States Supreme Court said:

[I]f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order. * *

A free press cannot be made to rely solely on the sufferance of government to supply it with information.

443 U.S. at 103, 99 S.Ct. at 2671.

3. We sympathize with the juvenile court's attempt to protect the children in the pending juvenile court matter from further embarrassment and humiliation. *See* Warren & Brandeis, *The Right to Privacy*, 4 Harv.L.Rev. 193, 196 (1890), *quoted in Cox Broadcasting*, 420 U.S. at 487 n. 16, 95 S.Ct. at 1042 n. 16.

However, "[t]he fact that the liberty of the press may be abused by miscreant purveyors of scandal does not make any the less necessary the immunity of the press from previous restraint * * *." *Near*, 283 U.S. at 720, 51 S.Ct. at 632.

> Some degree of abuse is inseparable from the proper use of everything, and in no instance is this more true than in that of the press. It has accordingly been decided by the practice of the States, that it is better to leave a few of its noxious branches to their luxuriant growth, than, by pruning them away, to injure the vigour of those yielding the proper fruits. And can the wisdom of this policy be doubted by any who reflect that to the press alone, chequered as it is with abuses, the world is indebted for all the triumphs which have been gained by reason and humanity over error and oppression * * *.

*Id.* at 718, 51 S.Ct. at 631 (quoting Report on the Virginia Resolutions, Madison's Works, vol. iv, 544).

4. The court's motives were entirely honorable. The child's anxiety and stress, however, were primarily caused by other factors including prolonged interrogation and removal from the home. There is no showing that the petitioners acted illegally. The court's order violated a fundamental constitutional right. There being no adequate remedy at law, the writ must issue. Our order of December 28, 1984 is confirmed based on the foregoing analysis.

**DECISION**

The juvenile court's order was an unconstitutional prior restraint of publication. Paragraph 3 of the trial court's order dated December 21, 1984 and the amended order dated December 27, 1984 are vacated.

The writ of prohibition is granted and the matter is remanded to the juvenile court for the fashioning of a proper order for the protection of the involved children.

Order vacated, writ granted, and remanded.