**In re Access to Law Enforcement Records Relating to the Arrest of Peter Daniel QUINN on November 10, 1992.**

**Nos. C5–92–2526, C0–92–2529, C4–93–132, C6–93–133 and C8–93–134.**

Court of Appeals of Minnesota.

July 6, 1993.

Review Granted Sept. 21, 1993.

482

Paul R. Hannah, Laurie A. Zenner, Hannah & Zenner, St. Paul, for St. Paul Pioneer Press.

John P. Borger, Thomas S. Schroeder, Faegre & Benson, Minneapolis, for Minneapolis Star Tribune.

Joseph M. Crosby, Steven T. Grimshaw, Crosby & Grimshaw, Minneapolis, for appellant Jane Doe.

Ronald I. Meshbesher, James H. Gilbert, John P. Sheehy, Jack S. Nordby, Meshbesher & Spence, Ltd., Minneapolis, for A.B., C.D., and E.F.

Michael J. Colich, Michael J. Colich & Associates, Peter A. Cahill, Minneapolis, for Peter Quinn.

Considered and decided by RANDALL, P.J., and SHORT and AMUNDSON, JJ.

## OPINION

SHORT, Judge.

This matter arises out of a police investigation into an alleged rape involving a professional hockey player. After a two-week investigation, the county attorney determined there was no basis for criminal prosecution. The hockey player then asked the trial court to expunge and seal the police department's investigative file, and the court granted the motion. On petition for writ of prohibition, the victim of the alleged rape and representatives of local print media argue: (1) the trial court had no power to order expungement of the file; and (2) the trial court's expungement order is an unconstitutional prior restraint on free speech. We disagree, decline to issue the writ, and affirm.

## FACTS

A nineteen-year-old woman claims she was raped by Peter Daniel Quinn in the early morning hours of November 10, 1992, at a hotel room in Bloomington. Other persons, male and female, allegedly were present in the hotel room during the incident. Quinn was arrested and released on bail. His arrest and speculation as to who else was present in the hotel room received widespread media attention. Although the state declined to prosecute, Quinn was released from his contract with the Minnesota North Stars professional hockey team because of a curfew violation on that night.

In separate actions, Quinn and three anonymous male witnesses sought temporary restraining orders enjoining the City of Bloomington from releasing any information contained in the investigative file. A trial judge granted temporary relief and scheduled the matters for a consolidated hearing. Cowles Media Company (the Minneapolis *Star Tribune*), Northwest Communications, Inc. (the St. Paul *Pioneer Press*), and three anonymous women involved in the incident sought the court's leave to intervene. The two newspapers opposed expungement and sealing of the investigative file; the three women requested anonymity should the files be released. In addition, the victim of the al-

leged rape sought a copy of the investigative file before it was expunged or sealed. The trial court granted all motions to intervene. After a hearing, the trial court: (a) ordered Quinn's file expunged and sealed; (b) remanded all anonymous witnesses' requests to the City for administrative proceedings; (c) denied the victim's request for a copy of the file; and (d) granted a motion by the three anonymous male witnesses that the documents in support of their motions be sealed, but only with respect to their affidavits in support of their motions. The newspapers seek a writ of prohibition requiring the trial court to allow access to the investigative file.

## ISSUES

I. Did the trial court have the authority to issue an expungement order?

II. Is the trial court's expungement order an unconstitutional prior restraint on publication?

III. Under these circumstances, may we issue a writ of prohibition preventing the trial court from enforcing its expungement order?

## ANALYSIS

■ In considering the newspapers' request for a writ of prohibition, we must determine whether the trial court abused its discretion in entering the December 15, 1992 expungement order. *See, e.g., Ginsberg v. Williams*, 270 Minn. 474, 479, 135 N.W.2d 213, 218 (1965) (writ of prohibition will issue to restrain court from exceeding its legitimate powers in a matter over which it has jurisdiction); *Loveland v. Kremer*, 464 N.W.2d 306, 308 (Minn.App. 1990) (appellate court may issue writ of prohibition to prevent abuse of discretion when there is no other adequate remedy at law).

## I.

■ The newspapers argue the trial court's order, in barring access to the investigative file, impermissibly extends the

trial court's expungement power.[1] We disagree. While the investigative file's contents are public data within the meaning of the Minnesota Government Data Practices Act, *see* Minn.Stat. § 13.82 (1992) (comprehensive law enforcement data), classification of information as public does not prevent its expungement. A trial court can, in its discretion, order the expungement of all publicly classified information pertaining to arrest and prosecution. *See In re R.L.F.,* 256 N.W.2d 803, 805 (Minn.1977) (arrest records available to public may be expunged); *State v. P.A.D.,* 436 N.W.2d 808, 810–11 (Minn.App.1989) (same), *pet. for rev. denied* (Minn. Mar. 12, 1989).

■ Expungement is available "[u]pon the determination of all pending criminal actions or proceedings in favor of the arrested person." Minn.Stat. § 299C.11 (1992). In the present case, the Hennepin County Attorney's Office declined to bring charges against Quinn after its investigation of the November 1992 incident. Such a result constitutes a determination in Quinn's favor for purposes of expungement. *See, e.g., State v. C.A.,* 304 N.W.2d 353, 357 n. 3 (Minn.1981) (remand of jury conviction for consensual sodomy that was not followed by a retrial constituted a determination in defendant's favor); *State v. L.K.,* 359 N.W.2d 305, 307–08 (Minn.App. 1984) (trial court's dismissal of misdemeanor charge of disorderly conduct following a continuance for one year without entry of a plea constituted a determination "in favor of the arrested person"). In Minnesota, "determination of all pending criminal proceedings in favor of the arrested person" means determination in any way except conviction or admission of guilt. Comment, *supra* note 1, at 235; *see, e.g., R.L.F.,* 256 N.W.2d at 807 (petitioner sought expungement following guilty plea).

■ A trial court's expungement power can flow from either of two sources. An arrested person may request expungement under section 299C.11. *See* Minn.Stat.

---

1. "Expungement" refers to any of a variety of methods employed to cancel or revoke criminal records. *See generally* Comment, *Criminal Procedure: Expungement of Arrest Records,* 62 Minn.L.Rev. 229, 229 & 229 n. 6 (1978) (describing and defining expungement).

§ 299C.11 ("the arrested person shall, upon demand, have all * * * identification data, and all copies and duplicates thereof"). In addition, beyond this statute, a trial court has the inherent authority to expunge not only identification data, but also any other information held by various agencies, where such expungement is appropriate to protect the petitioner from some harm caused by release of the information. *C.A.*, 304 N.W.2d at 358; *P.A.D.*, 436 N.W.2d at 810. In the present case, the trial court entered its order pursuant to its inherent expungement power.

■■■ The newspapers suggest a trial court's inherent expungement power is narrower than the statutory expungement power, and thus contend the trial court's December 15 expungement order exceeded the authority of its inherent powers. We disagree. In Minnesota, a trial court's power to order expungement is entirely within its inherent equitable powers, and decisions to expunge may be based upon a purely judicial balancing of the equities in each case. Comment, *supra* note 1, at 234; *see C.A.*, 304 N.W.2d at 358 (discussing judicial balancing test).[2] The source of such power is the judiciary's inherent authority to control its records and agents, extending under appropriate circumstances to the issuance of expungement orders. *C.A.*, 304 N.W.2d at 358; *L.K.*, 359 N.W.2d at 309. The scope of a trial court's inherent power to expunge is broad. *See P.A.D.*, 436 N.W.2d at 810–11 (describing scope of expungement power).

■■ Because of the broad nature and scope of the inherent power to expunge, once all criminal proceedings were concluded in Quinn's favor, the trial court had full authority under its inherent powers to order expungement of the investigative file upon a proper application of the *C.A.* balancing test.

## II.

■■ A request for a writ of prohibition by a newspaper or other news medium presents special concerns because constitutional issues may be involved. *See, e.g., Minneapolis Star & Tribune Co. v. Schmidt*, 360 N.W.2d 433, 434 (Minn.App. 1985) (writ of prohibition will issue if trial court issues an unconstitutional prior restraint of free speech). The two newspapers argue the trial court's expungement order is an unconstitutional prior restraint on publication. We disagree. This case presents no constitutional issue because no prior restraint is involved and the newspapers have no constitutional right of access to the information in the investigative file.

■■ A "prior restraint" imposes a limit on a news medium's right to publish information already in its possession. *Cherne Indus., Inc. v. Grounds & Assocs.*, 278 N.W.2d 81, 94 n. 9 (Minn.1979); *Northwest Publications, Inc. v. Anderson*, 259 N.W.2d 254, 257 (Minn.1977); Laurence H. Tribe, *American Constitutional Law* § 12–34, at 1040 (2d ed. 1988). The trial court's expungement order is not a prior restraint because it does not attempt to suppress the newspapers' publication of material relating to the events of November 1992. In this respect, the expungement order differs from "gag orders" restricting newspapers' ability to publish information already in their possession, which have been found to be unconstitutional. *See, e.g., Minneapolis Star & Trib-*

**2.** The Comment divides courts' construction of the power to expunge into four groups, with the fourth group of states applying the broad test described above. Comment, *supra* note 1, at 233–34 & 233–34 nn. 27–31. In 1978, when the Comment was written, Minnesota was part of the third group of jurisdictions—those limiting a court's inherent expungement power to cases involving extreme circumstances. *Id.* at 234. Since that time, however, Minnesota has entered the fourth group of jurisdictions (those applying the broadest possible test) by virtue of the Minnesota Supreme Court's 1981 decision in

*C.A.*. *See C.A.*, 304 N.W.2d at 358 (when a constitutional right is not involved, the court must balance the benefit to the petitioner with the disadvantages to the public by the proposed action). We took note of this broadened view of expungement in *P.A.D.* *See P.A.D.*, 436 N.W.2d at 810 (any expungement not required by section 299C.11 or by the state and federal constitutions is within the trial court's inherent authority and discretion).

We evaluate the trial court's application of the *C.A.* balancing test to the specific facts of this case in section III.

*une Co. v. Lee,* 353 N.W.2d 213, 215 (Minn. App.1984) (court of appeals issued writ of prohibition because "gag order" regarding publication of information relating to juvenile dependency case was an unconstitutional prior restraint). The newspapers remain free to gather information regarding the incident from all properly available sources and to publish it. Therefore, their constitutional right to publish information has not been abridged.

▉▉▉▉ The Constitution does not specifically grant the newspapers an affirmative right of access to the information. *Houchins v. KQED, Inc.,* 438 U.S. 1, 11–12, 98 S.Ct. 2588, 2595, 57 L.Ed.2d 553 (1978) (plurality opinion); *Minneapolis Star & Tribune Co. v. Schumacher,* 392 N.W.2d 197, 204 (Minn.1986).[3] Constitutional cases establishing the press' First Amendment right of access to the judicial system have addressed the press' right to attend criminal trials. *See, e.g., Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 598, 602, 102 S.Ct. 2613, 2616, 2617–18, 73 L.Ed.2d 248 (1982) (invalidating a Massachusetts statute requiring exclusion of the public and the press from sex-offense trials during the testimony of victims under the age of eighteen); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 558, 100 S.Ct. 2814, 2829–30, 65 L.Ed.2d 973 (1980) (criminal trials must be open to the public absent an overriding interest articulated in findings) (plurality opinion); *Gannett Co. v. DePasquale,* 443 U.S. 368, 391–92, 99 S.Ct. 2898, 2911–12, 61 L.Ed.2d 608 (1979) (declining to decide whether the First Amendment gives the public the right to attend criminal trials, but finding that if there was such a right of access, the state court had given it "all appropriate deference"). To the extent there is a constitutional right of access to official criminal proceedings, it involves only the government's obligation to let the press and public enter its courtrooms to observe the public drama taking place therein. *See* Tribe, *supra* § 12–20, at 965 (discussing *Richmond Newspapers* ). Particularly in light of the fact that much

information regarding the incident is available to the two newspapers through traditional news-gathering techniques, such as interviews with confidential sources, the Constitution does not require that the press be given access to the investigative file.

Because no constitutional issue is involved, the sole inquiry regarding the propriety of the trial court's expungement order is whether the trial court properly applied the *C.A.* balancing test. *See C.A.,* 304 N.W.2d at 358 (when a constitutional right is not involved, court must apply balancing test).

### III.

▉▉▉▉ Prohibition is an extraordinary remedy and should be used only in rare cases where there is no other remedy. *Shetka v. Kueppers, Kueppers, Von Feldt & Salmen,* 454 N.W.2d 916, 921 (Minn. 1990); *Brakke v. Beardsley,* 279 N.W.2d 798, 800 (Minn.1979). *See generally* David W. Clarke, Note, *Prohibition: The Elusive and Misunderstood Writ,* 16 U.Rich. L.Rev. 693, 693 (1982) (describing history and use of writ of prohibition). As a general rule, three elements are necessary to justify the issuance of a writ of prohibition: (1) the trial court is about to exercise a judicial power; (2) the exercise of such power is unauthorized by law; and (3) the exercise of such power will result in injury for which there is no other adequate remedy. *Richardson v. School Bd. of Indep. Sch. Dist. No. 271,* 297 Minn. 91, 93, 210 N.W.2d 911, 913 (1973); *Blohm v. Minneapolis Urological Surgeons, P.A.,* 442 N.W.2d 812, 814 (Minn.App.), *rev'd on other grounds,* 449 N.W.2d 168 (Minn.1989); *Lee,* 353 N.W.2d at 214. Here, the second element is not met.

▉▉▉▉ Under its inherent authority to expunge, the trial court may order expungement of information in the investigative file to protect Quinn from harm that would be caused by release of the information if the benefits to Quinn outweigh the disadvantages to the public by expungement. *C.A.,* 304 N.W.2d at 358; *P.A.D.,* 436 N.W.2d at 810. The trial court performed the *C.A.*

---

**3.** Moreover, even if the Constitution provides a right of access to information still in the government's hands, the judiciary's ability to enforce

such a right of access is limited. Tribe, *supra* § 12–20, at 955.

balancing test, and determined the potential harm that would result to Quinn from release of the investigative file would be significant, whereas the disadvantages to the public in not releasing the information would be minimal. It is undisputed that wide dissemination of arrest records outside law enforcement circles adversely affects an arrestee's ability to secure employment and is prejudicial to his or her social, economic, and psychological well-being. Comment, *supra* note 1, at 231–32. For the exonerated arrestee, such as Quinn, this result means that society exacts a punishment even when the law does not. *Id.* at 232. By contrast, the public's need to know about the incident already has been satisfied by the newspapers' thorough reporting of it last fall. Given these facts, the trial court's conclusion was not an abuse of its discretionary inherent power to order expungement.

Expungement of arrest records is not an automatic remedy, and we emphasize trial courts must proceed cautiously in exercising their inherent authority to expunge. *C.A.*, 304 N.W.2d at 359; *P.A.D.*, 436 N.W.2d at 810. Nonetheless, in the present case, it was within the trial court's discretion and in keeping with *C.A.*'s balancing test for the trial court to conclude that Quinn's need to move forward with a productive life and put this incident behind him outweighed the public's need to know more about the events of November 1992.

With respect to the requests of the other parties involved in the incident, we note the City of Bloomington has agreed to anonymity for the three women and no party opposes it. In addition, the three anonymous male witnesses to the incident have conceded the documents submitted in support of their motions to seal the file may be made available to the public. However, any documents pertaining to the three men that are part of the City of Bloomington's investigative file, such as their statements to police, are included within the scope of the trial court's expungement order and access to them therefore is forbidden.

In conjunction with its expungement order, the trial court properly denied the alleged rape victim's request for a complete copy of the investigative file prior to its sealing and expungement. The result of the trial court's expungement order is that Quinn's record is entirely removed from law enforcement files and from public scrutiny. *See* Comment, *supra*, note 1, at 229 n. 6 (describing effect of expungement). While expungement means that access to the investigative file is forever foreclosed to the alleged rape victim, she has the full range of discovery methods available to her should she decide to pursue any type of civil action. *See generally* Minn. R.Civ.P. 26–37 (depositions and discovery).

## DECISION

A trial court's inherent powers authorize it to order a criminal investigative file expunged when the subject of the investigation was not charged with a crime. Such an expungement order is not an unconstitutional prior restraint on publication. Under these circumstances, we will not issue a writ of prohibition to prevent the trial court from enforcing its expungement order.

**Affirmed.**