OPINION OF THE COURT
Lewis R. Friedman, J.
This motion by wife, in the midst of her divorce action, seeks an order enjoining husband from telling their 10-year-old daughter that wife has life-threatening renal cancer. It presents an important First Amendment issue which impacts *666 on this court’s power to act in the best interests of the child and which concerns a parent’s right to resort to court to resolve interparental disputes over child rearing.
The parties, who were married in 1981, have one 10-year-old child Hannah. The parties separated in 1987; wife has de facto custody of Hannah. Recently, wife was diagnosed with metastasized renal cell carcinoma. Wife has sought treatment for her medical condition and surgery has been recommended. Additionally, wife has consulted three specialists for advice on how to deal with Hannah. While all three have advised it is not yet the proper time to inform Hannah, one doctor has recommended that wife begin to prepare Hannah psychologically. Husband recently informed wife that he does not intend to tell Hannah about wife’s condition but, if Hannah asks him about it, he will tell her the truth.
Wife has concluded that it would be traumatic for Hannah to learn of her mother’s medical condition at this time, and seeks an injunction from this court. In opposition, husband contends that an injunction would impair his right to free speech and, therefore, the court may not grant it.
FIRST AMENDMENT CONCERNS
Analysis starts with well-established currently valid basic principles. The First Amendment of the US Constitution and the State Constitution generally bar injunctions against speech (Near v Minnesota, 283 US 697). Any injunction which operates as a prior restraint on expression bears a "heavy presumption” against its constitutional validity (Organization for a Better Austin v Keefe, 402 US 415, 419; Bantam Books v Sullivan, 372 US 58, 70). Nevertheless, "the protection even as to previous restraint is not absolutely unlimited” (Near v Minnesota, supra, 283 US, at 716). The Supreme Court has recognized certain extraordinary situations in which the Government’s interest in preventing grave harm outweighs the dangers inherent in limiting speech. (See, Schenck v United States, 249 US 47, 52; Near v Minnesota, supra; cf., Snepp v United States, 444 US 507.) In the words of Justice Brandeis, "[t]o justify suppression of free speech there must be reasonable ground to fear that serious evil will result if free speech is practiced” (Whitney v California, 274 US 357, 376). New York has followed an analysis similar to the Supreme Court’s and reached a similar result. The Court of Appeals has noted that a content-based regulation that burdens speech requires *667 that the proponent "demonstrate that it serves a compelling State interest and is narrowly tailored to achieve that purpose” (Matter of Children of Bedford v Petromelis, 77 NY2d 713, 725; cf., Arkansas Writers’ Project v Ragland, 481 US 221, 231; Perry Educ. Assn. v Perry Local Educators’ Assn., 460 US 37, 45; Consolidated Edison v Public Serv. Commn., 447 US 530, 540; First Natl. Bank v Bellotti, 435 US 765, 786). Where a restriction on speech is "relatively narrow and well defined and serves a significant State or public interest the infringement should be tolerated” (Pecoraro v City of Buffalo, 112 Misc 2d 985, 988).
Wife’s argument here is that "the best interest of the child” is a compelling State interest that permits a narrowly drawn well-defined infringement of husband’s First Amendment rights.
There is a well-established body of constitutional law which holds that the court may limit that "speech” which is made available to children by persons other than their parents. "[T]he power of the State to control the conduct of children reaches beyond the scope of its authority over adults” (Prince v Massachusetts, 321 US 158, 170; Ginsberg v New York, 390 US 629, 638; cf., Emerson, Toward a General Theory of the First Amendment, 72 Yale U 877, 939 ["regulations of communication addressed to (children) need not conform to the requirements of the first amendment in the same way as those applicable to adults”]). Thus, for example, child pornography is not constitutionally protected speech (Osborn v Ohio, 495 US 103; R.A.V. v City of St. Paul, 505 US —, 112 S Ct 2538; see, People v Sprowal, 49 Misc 2d 806 [App Term, 1st Dept]).
Some courts have upheld orders placing a "best interest of the child” limitation on speech addressed to children. Indeed, usually without objection or even comment Family Court and Supreme Court often issue orders limiting speech addressed to the children. These matters appear to be so routine that they are rarely reported. For example, the Third Department in Matter of Fargnoli v Faber (105 AD2d 523, 524), without discussion, upheld an injunction addressed to counsel and a mother prohibiting them from making disparaging remarks about the children’s representation by a Law Guardian. The Court merely noted that "[i]nasmuch as the injunction is narrowly directed and proscribes only certain communications which would be improper in any event * * * we are satisfied that no First Amendment rights have been infringed.” (Supra, at 525.) Similarly, based on Fargnoli, the Florida Court of *668 Appeals upheld against a constitutional attack an order requiring a mother to teach the child "to love and respect” the father, when she did not believe in those statements (Schütz v Schütz, 522 So 2d 874). A similar result was reached in Dickson v Dickson (12 Wash App 183, 186-189, 529 P2d 476, 478-479) where a father was enjoined from making derogatory comments about the mother; the father’s "right to impose those views upon the young, the impressionable, the unguided and the immature in our opinion is not an unbridled right.” (Matter of Gordon v Walkley, 41 AD2d 493, 495.)
This court finds that the case law supports the conclusion that the court has the power, in an appropriate case, to enjoin one or both parents from making statements to a child that are against the "best interests” of the child if the order is narrowly drawn to meet the purpose. That is, the court must perform a balancing test to weigh the child’s right to be protected against harm and the parent’s fundamental constitutional right of free speech. The issue of whether to issue an injunction is most readily resolved when there is no serious dispute about the best interests of the child, such as in Fargnoli (supra) where the proposed injunction is against disparaging a child’s guardian or parent.
RESORT TO THE COURTS
This case presents a difficult question since the court must first address whether a "serious evil” will occur if husband is not enjoined from telling Hannah of wife’s condition. Wife’s fear that Hannah will be traumatized by husband’s anticipated disclosure is understandable. Finding out that a parent has a serious, perhaps fatal, illness is an experience that shakes people, children or adults, to their very core. However, whether that experience can be deemed a "serious evil” sufficient to bring the power of the State to intervene is another matter. At the outset, it is not self-evident that it would be inherently evil, should Hannah become worried and apprehensive enough to ask about her mother’s condition, for the father to provide her with a truthful answer. If the father tells her a falsehood about her mother’s condition, which if the disease cannot be arrested will be proven to be false in a devastating way, it may well be worse for the child and severely damage her relationship with her father, her sole remaining parent. Moreover, wife does not dispute that husband loves and cares for his daughter very much. The court *669 assumes that husband would take into account the circumstances of Hannah’s age and emotional state in tailoring his answers; indeed, as he states in his papers here, he would obtain professional advice on the subject.
What an answer to the child ought to contain, when it ought to be delivered, and by whom are difficult and emotion-laden issues. It is inappropriate for this court to prescribe or proscribe an answer in the guise of deciding the "best interests” of the child. The courts, in their parens patriae role, are an arm of the State serving the important societal function of protecting children, even from their parents if necessary. Yet American values at the end of the 20th century also require that courts safeguard the privacy of family relationships and the private ordering of a person’s life, by adopting a policy of minimum State intervention consistent, of course, with the State’s goal of protecting children from exploitation from adults (see, Goldstein & Gitter, On the Abolition of Grounds for Divorce: A Model Statute and Commentary, 3 Fam LQ 75 [1969]). As the Supreme Court stated long ago "[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder” (Prince v Massachusetts, supra, 321 US, at 166). A "child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations” (Pierce v Society of Sisters, 268 US 510, 535). The Court of Appeals has taken the same view. A "parent’s concern for the liberty of the child as well as for his care and control * * * [is a] fundamental * * * interest and right” (Matter of Ella B., 30 NY2d 352, 356; Matter of Tammie Z., 66 NY2d 1, 4).
Parents should be discouraged from resorting to the courts to resolve ordinary problems of daily living. While there may be some theoretical basis for State intervention to limit parental power (1 Bentham, Theory of Legislation, at 253 [1840]) that is not a justification for having difficult parental decisions made by the courts. Husband and wife are currently the joint legal guardians of Hannah. The mere pendency of a matrimonial case does not change that basic factor. It is not for the courts, absent extraordinary compelling circumstances, to usurp the functions of one parent at the behest of the other. "Our courts will hold aloof when intervention is unnecessary for the welfare of the child” (Finlay v Finlay, 240 NY 429, 431 *670 [Cardozo, J.]). This court is not the proper body to weigh differing opinions, lay and expert, find the "correct” solution, and impose it by calling it to be in the "best interests” of this child. The court does not, in our society, serve as a "super parent”, reviewing and correcting the decisions of a child’s lawful parents. Nor is it the court’s function to prevent a child, who has her own "constitutionally protectible interests” (Wisconsin v Yoder, 406 US 205, 243 [Douglas, J., dissenting in part]) from learning the truth merely because one parent believes a falsehood to be temporarily the greater good.
The court cannot conclude that the evil to be overcome is substantial. There is no reason for the court to intervene. There is no reason for the court to infringe on husband’s constitutional rights or his rights and obligations as a parent.
The motion for an injunction is denied.