**JUVENILES, CRIMES, PHOTOS:** Minn. Stat § 260.161, subd. 3(a) only prohibits peace officers from taking photos of children in custody and does not prohibit news media.

**SHERIFFS, POLICE, JURISDICTION:** County sheriffs have jurisdiction to investigate crimes anywhere in their county, even in cities with established police forces.

2681
390a-6
(cr. ref. 494a, 785d)

October 14, 1997

Mr. Todd S. Webb
Clay County Attorney
Clay County Courthouse
P.O. Box 280
807 North 11th Street
Moorhead, MN  56561-0280

**Re: Request for Opinions**

Dear Mr. Webb:

In your letter to the Office of the Attorney General, you present substantially the following questions:

## QUESTION NO. 1

Does Minn. Stat. § 260.161, subd. 3(a) prohibit only peace officers from taking photographs of a child taken into state custody, or does it also apply to prohibit the media from taking photographs of a juvenile taken into state custody?

## OPINION

Minn. Stat. 260.161, subd. 3(a) provides that "no photographs of a child taken into custody may be taken without the consent of the juvenile court .... Any person violating any of the provisions of this subdivision shall be guilty of a misdemeanor." The quoted language, taken in isolation, would seem to constitute a prohibition directed to all persons. However, the context in which the language appears indicates that a narrower interpretation is intended.

First the heading of subdivision 3 is "Peace Officer Records of Children." While such headings are not part of the statute,[1] they may nonetheless be taken into account in determining legislative intent. See e.g., Hyland v. Metropolitan Airports Comm'n., 538 N.W.2d 717 (Minn. Ct. App. 1995). Furthermore, the remainder of this language in subdivision 3(a) expressly refers to Minn. Stat. § 3C.08 subd. 3 (1996) "peace officers records." It does not seem likely that the legislature would place a prohibition applicable to the general public in the middle of a paragraph otherwise related only to governmental officials.

Second, broad application of the prohibition to private persons, including news media, could give rise to constitutional objections. The United States Supreme Court was confronted with a similar statute in Smith v. Daily Mail Publishing Co., 443 U.S. 97, 99 S. Ct. 2667 (1979). At issue in Smith was a state statute which provided:

> [N]or shall the name of any child, in connection with any proceedings under this chapter, be published in any newspaper without a written order of the court . . . .

Id. at 2668. Violation of this statute was a misdemeanor. Id. The Supreme Court held that this statute violated the First and Fourteenth Amendments to the United States Constitution.[2] The court stated that "if a [media source] lawfully obtains truthful information about a matter of public · significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." Id. at 2671. See also, Minneapolis Star and Tribune Co. v. Schmidt, 360 N.W.2d 433, 435 (Minn. Ct. App. 1985) (quoting Smith). In Smith, the state attempted to convince the Court that their statute did further a state interest of the highest order -- rehabilitation of the juvenile offender through protection of the offender's anonymity. The Court was unpersuaded by the state's rationale and stated that,

---

[1] Minn. Stat. § 3C.08 subd.3 (1996).

[2] The court did not specify upon which of two alternative grounds it was reviewing the case, because "[w]hether we view the statute as a prior restraint or as a penal sanction for publishing lawfully obtained, truthful information is not dispositive because even the latter action requires the highest form of state interest to sustain its validity." Id. at 2670.

"[i]f the information is lawfully obtained, as it was here, the state may not punish its publication except when necessary to further an interest more substantial than is present here." Smith, 99 S.Ct. at 2671.

This decision followed Oklahoma Publishing Co. v. District Court, 430 U.S. 308, 97 S. Ct. 1045 (1977). In Oklahoma, a photographer took the picture of a juvenile defendant as he was being transported from the courthouse to a vehicle. Id. at 309. The trial court enjoined the media from publishing either this picture or the defendant's name, which was obtained by media sources attending the court hearing. Id. The Supreme Court reversed the district court's order, holding that the district court had abridged the freedom of the press, in violation of the First and Fourteenth Amendments. Id. at 311-12. In support of this decision, the court quoted Craig v. Harney, 331 U.S. 367, 374 (1947) ("Those who see and hear what transpired [in the courtroom] can report it with impunity" (alteration in original)). Id. at 311.

Minnesota courts recognize this constitutional limitation. In striking down a juvenile court order which prohibited the media from publishing any information about a pending juvenile court proceeding, the Court of Appeals stated:

> The possibility that one child's anxiety may increase because of media coverage of this proceeding does not rise to the level of a compelling state interest justifying a restraint on the publication of information obtained from public records and independent sources.

Schmidt, 360 N.W.2d at 435. The Schmidt court explained that, "[o]nce truthful information is publicly revealed or in the public domain, a court may not 'constitutionally restrain its dissemination.'" Id. (quoting Smith, 443 U.S. at 103, 99 S. Ct. at 2671).

It thus appears that if the Minnesota statute is interpreted to apply to third parties -- such as news media -- and to prevent these third parties from photographing juveniles, it may potentially violate the First and Fourteenth Amendments to the United States Constitution. In construing statutes, however, we are to presume that "[t]he legislature does not intend to violate the constitution of the United States or of this state[.]" Minn. Stat. § 645.17(1). For the

foregoing reasons we do not construe section 260.161, subd. 3(a) to prevent news media from photographing and publishing the photographs of juveniles obtained while the juvenile is "in the public domain," nor to punish those who disseminate such a photograph. Rather, the statute should be applied to law enforcement personnel only.

## QUESTION NO. 2

Does the County Sheriff have any jurisdictional limitswhen investigating criminal conduct occurring in a municipality in the Sheriff's county which employs its own police force?

## OPINION

The county sheriff is the chief law enforcement officer for the county. Minn. Stat. § 387.03 ("The sheriff shall keep and preserve the peace of his county"). "A sheriff has a general responsibility for enforcing the criminal laws throughout his county." Op. Atty. Gen., 733, July 14, 1947; In re Olson, 211 Minn. 114, 300 N.W. 398 (1941) ("The sheriff as chief peace officer of his county is responsible both by common and statutory law to keep and preserve peace and good order within his county"). Therefore, within the bounds of the county, the sheriff is responsible for ensuring the criminal laws are enforced and the peace is maintained -- regardless of any municipal borders within the county and regardless of whether any of these municipalities employ independent police forces.

Minn. Stat. § 436.05, subd. 1 provides that "[a]ny home rule charter or statutory city, town or the sheriff of any county may contract for the furnishing of police service to any other home rule charter or statutory city or town . . . ." This statute does not imply that, in order to enforce criminal laws in a municipality within its own county, a sheriff must have contractual authority to do so. Rather, this section refers to a sheriff contracting with municipalities outside of its own county. For within its own county, the sheriff is the chief law enforcement officer with a non-delegable duty to enforce the laws and "preserve the peace of his county"; this statute

explicitly does not relieve the sheriff "of any duties imposed by law." Minn. Stat. §§ 387.03, subd. 1; 436.05, subd. 5. The County Sheriff therefore has the authority to investigate criminal matters within the borders of a municipality employing an independent police force.

Very truly yours,

HUBERT H. HUMPHREY III
Attorney General

PAUL R. KEMPAINEN
Assistant Attorney General

WILLIAM F. KLUMPP, JR.
Assistant Attorney General

AG:36697 v1