**In re the MARRIAGE OF Jean Ann GESKE, f/k/a Jean Ann Marcolina, Petitioner, Respondent,**

v.

**Jeffrey Alan MARCOLINA, Appellant.**

**No. C9–01–1162.**

Court of Appeals of Minnesota.

April 2, 2002.

James Vedder, M. Sue Wilson, Minneapolis, for respondent.

Timothy D. Lees, Steven T. Hennek, Hennek Klaenhammer and Lees, P.A., Roseville, for appellant.

Considered and decided by SCHUMACHER, Presiding Judge, HANSON, Judge, and PORITSKY, Judge.

## OPINION

PORITSKY, Judge.*

In this dissolution case, the appellant-father appeared on a television interview and discussed the on-going custody dispute between him and respondent-mother. In the course of the interview, the names and pictures of the parties' children were broadcast with father's consent. Upon mother's subsequent motion, the district court enjoined the father from further publishing the names or images of the parties' children and ordered the father to pay attorney fees. The father appeals, arguing that the district court erred in granting the injunction because (a) there was no showing of a real and substantial harm that the injunction would prevent, and the district court's findings in this connection are unsupported by the evidence; (b) the mother failed to establish that the restraint on the father's freedom of expression was supported by a compelling state interest; and (c) the injunction improperly enjoined the father from disseminating information that is already in the public domain. In addition, the father argues that the district court should not have awarded the mother attorney fees because the record does not support the award. The mother seeks attorney fees on appeal. We modify the district court's injunction so as not to prohibit Marcolina from disseminating the children's names, which are in the public domain, but affirm the injunction insofar as it prohibits Marcolina from disseminating the children's pictures in the media.

## FACTS

The 1987 marriage of Jean Ann Geske and Jeffrey Alan Marcolina produced two daughters. The older girl, A.K.M., is nine years old, and the younger girl, D.C.M., is eight. Geske and Marcolina were divorced in 1996, with Geske being awarded sole legal and physical custody and Marcolina being awarded reasonable and liberal visitation. Due to Marcolina's abusive, intimidating and controlling behavior, his visitation rights were suspended in February 2000. In November 2000, the district court determined that it was in the younger girl's best interests to be reunified with Marcolina, but that it was not in the older girl's best interests to be so reunified.

On February 7, 2001, KSTP–TV aired a "Focus 5 Report" news story discussing

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

several aspects relating to family law and visitation, in which Marcolina was one of the featured fathers. KSTP had contacted Marcolina, and he voluntarily and cooperatively appeared in the story, which, pertinently, consisted of an interview in his home, video footage of unopened presents addressed from "Dad" to the children by first name, and a photograph of the children. The children were only mentioned by first name, but Marcolina's name was given in full. Neither Geske nor the children had been given prior notification of the news story by Marcolina, and KSTP–TV never contacted Geske to request permission to use the children's first names or photographs.

At the time of Marcolina's interview, the children were staying overnight with a friend. The friend's parents saw the interview and called Geske, who had not seen the broadcast. After consulting her attorney, and upon advice from her attorney, Geske told the children about the story.

On February 13, 2001, Geske brought a motion before the district court seeking an order restraining Marcolina from publishing the names or images of the children. The district court issued a temporary injunction, and, after oral argument and briefing, the district court issued the following permanent injunction:

> Marcolina is immediately restrained from publishing the names (including first names) or images of [the children] on television, radio, in any print publica-

tion, on the Internet or through any other form of media.

This injunction was based on the court's finding that

> broadcast of the [children's] names and/or pictures in the media threatens their stability, emotional well-being and emotional health; it is not in their best interests.

The court considered the historical context of the children's relationship with their father, including extensive testimony regarding the children's fear of their father, their opposition to visitation, opinions of therapists and a guardian ad litem, and the district court's resultant suspension of Marcolina's visitation. The court referenced the children's emotional and physical problems as noted in previous orders.[1] The court then found that,

> [i]n light of the children's reaction to the use of their names and pictures in the media, their tenuous emotional state regarding [Marcolina] and the ongoing process for therapeutic reunification with [Marcolina] and the children, the Court finds that future use of their names and images in the media by [Marcolina] could certainly cause substantial and irreparable injury to the [children's] emotional well-being.

The court ordered Marcolina to pay reasonable attorney fees of $3,000. The district court later amended this order to provide for findings to support the award of attorney fees based both on Geske's

---

1. The order suspending Marcolina's visitation noted that the guardian ad litem could not persuade the children to see their father. The older girl had recurring physical symptoms, including stomachaches, vomiting, trembling, and intense crying associated with visitation. According to her therapist, the child was displaying regressive behavior and anxiety and both children were afraid of their father. The court found that continued visitation would cause the children harm. The court noted that several witnesses testified that the children appeared to show genuine affection for their father and that this discrepancy was "troubling." The court concluded that Marcolina's actions, and not Geske's actions, were causing the children's fear of Marcolina. Marcolina did not challenge these findings on appeal.

need and on Marcolina's conduct. This appeal followed.

## ISSUES

I. Did the district court abuse its discretion in determining that, without the injunctive relief ordered, the children would clearly suffer great, irreparable harm that is both real and substantial?

II. Can the best interests of the children serve as a compelling state interest supporting a narrowly tailored prior restraint on speech?

III. Were the children's names and pictures in the public domain, such that Marcolina has a right to disseminate that information, notwithstanding the harm it may cause the children?

IV. Did the district court abuse its discretion in requiring Marcolina to contribute to Geske's attorney fees?

## ANALYSIS

### I.

Marcolina first challenges the granting of the injunction on the ground that there was no showing of a real and substantial harm that would be prevented by the injunction. The granting of an injunction is an action that is committed to the sound discretion of the district court and "will not be disturbed on appeal unless, based upon the whole record, it appears that there has been an abuse of such discretion." *Howe v. Howe*, 384 N.W.2d 541, 544 (Minn.App.1986) (quotation omitted). Injunctive relief is limited to clear cases, reasonably free from doubt, and only when necessary to prevent great and irreparable injury. *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 504, 110 N.W.2d 348, 351 (1961). The threatened injury must be both real and substantial and the burden is on the moving party to establish the material allegations. *Id.; Hideaway, Inc. v. Gambit Invs. Inc.*, 386 N.W.2d 822, 824 (Minn.App. 1986). Findings regarding entitlement to injunctive relief will not be set aside unless clearly erroneous. *LaValle v. Kulkay*, 277 N.W.2d 400, 402 (Minn.1979).

The district court found two types of potential harm: (1) the emotional damage to the children resulting from any future publication by Marcolina, and (2) the detrimental effect that such publication would have on the reunification process. The district court made extensive findings as to the harm the father's action caused his children. The court took into account the girls' relationship with their father, including their fear of him, their opposition to his visitation, and the fact that the court had previously suspended his visitation with them. Both girls were in therapy.

The court noted that the girls' reactions to the broadcast were negative and that both girls suffered embarrassment, emotional upset, and anger. More specifically, the court found that on the day following the broadcast, the younger child, out of embarrassment, requested not to go to school. She did go to school, but was upset when classmates questioned her about the broadcast. She asked her teacher to tell her classmates not to question her about her father. The older girl commented that the father shouldn't even have the girls' pictures. The younger daughter stated she no longer wanted to give her father a valentine that she had made at the therapist's suggestion. She refused to listen to voice messages her father left for her. The court noted the girls' tenuous emotional state and concluded that any future use of the girls' names and images in the media by the father could certainly

cause substantial and irreparable injury to the girls' emotional well-being.

Based on the above findings, the court also concluded that the father's actions negatively affected the reunification process. We conclude that the district court's findings regarding the need for injunctive relief to preserve the reunification process were not clearly erroneous.

■ As to the degree of certainty of future harm, the district court found

that future use of their names and images in the media by [Marcolina] could certainly cause substantial and irreparable injury to the [children's] emotional well-being.

Although the district court's finding did not state it was absolutely certain that Marcolina's actions would cause harm to the children, a finding of absolute certainty is not needed. The Supreme Court indicated the standard in *AMF Pinspotters* when it held that,

[a]n injunction will not issue to prevent *an imagined injury* which there is no reasonable ground to fear. The threatened injury must be real and substantial.

260 Minn. at 504, 110 N.W.2d at 351 (emphasis added) (citations omitted). This is consistent with the general rule.

The apprehension of injury must be well-grounded, which means that there is a *reasonable probability* that a real injury for which there is no adequate remedy at law will occur if the injunction is not granted.

42 Am.Jur.2d *Injunctions* § 32 (2000) (emphasis added) (citations omitted). Here, the district court's finding that Marcolina's actions "could certainly cause" the girls harm is equivalent to a reasonable probability and more than an imagined injury. The district court's finding is legally sufficient.

The record supports the district court's findings. The district court was familiar with the case and properly took into account the previous proceedings between the parties. The district court referred to its findings regarding the children's fear and emotional instability, which were in the court's previous order suspending Marcolina's visitation rights; no appeal was taken from that order.

## II.

■ Marcolina next argues that the injunction constitutes a prior restraint on speech, which is reviewed "bearing a heavy presumption against its constitutional validity." *Minneapolis Star and Tribune Co. v. Schmidt,* 360 N.W.2d 433, 435 (Minn.App.1985) (quotation omitted). "Any exception to this fundamental principle must be necessitated by a compelling state interest, and narrowly tailored to serve that interest." *Id.* (quotation omitted).

This court has previously justified infringements of other fundamental rights by finding the best interests of the children to be a compelling state interest. *See, e.g., LaChapelle v. Mitten,* 607 N.W.2d 151, 163–64 (Minn.App.2000) (best interests of child is compelling state interest justifying infringement on a mother's fundamental right to travel), *review denied* (Minn. May, 16, 2000); *Sina v. Sina,* 402 N.W.2d 573, 576 (Minn.App.1987) (best interests of children took precedence over father's First Amendment freedom of religion).

In analyzing Marcolina's First Amendment claim, it is important to note what the district court's injunction, as modified by this court, prohibits and what it does not prohibit. What it does prohibit is Marcolina's publishing his children's pictures in the media. What it does not

prohibit are the following: It does not prohibit Marcolina from appearing or speaking in the media if he does not use the children's pictures. (Geske states that subsequent to the granting of the injunction Marcolina appeared on a radio broadcast involving his relationship with his children, in which he did not use their names. This broadcast was not prohibited by the terms of the injunction.) The injunction does not prohibit Marcolina from using the children's pictures in communications that are not in the media; thus there is no restriction on his freedom of expression when he speaks to his family, friends, or members of any support or advocacy groups. In addition, the injunction does not restrict anyone other than Marcolina. If his friends or associates decide to speak using the children's pictures, they will not violate the injunction. This aspect of the injunction follows from the district court's finding that what hurt the children was that it was their father, and not some third party, who used their names and pictures. Finally, and most importantly, the injunction does not restrict dissemination by the media. If any medium, print or electronic, chooses to use the children's pictures, it may do so and not violate the injunction.[2]

Marcolina argues that this court has already determined that all prior restraint of children's identities is unconstitutional. In *Schmidt*, this court vacated a prior restraint on a newspaper's publication of public information pertaining to a juvenile court matter where the juvenile court believed that one of the children involved would be traumatized by further publicity.

360 N.W.2d at 435. This court concluded that the potential traumatization of the child by further media exposure was not a compelling state interest. *Id.*

There are significant differences between *Schmidt* and the present case. First, in *Schmidt* the court issued an injunction prohibiting the media from disseminating a broad range of facts, not only the identities and photographs of juveniles involved in the case, but also the identities of witnesses and the parents of either parties and witnesses, and went further to prevent publication of the residence, occupation, place of school attendance or foster placement of "any * * * person or minor." *Id.* By contrast, here the order prohibits Marcolina only from using the children's pictures in the media and is thus considerably narrower in scope. The injunction only prohibits as much speech as necessary to serve the compelling state interest.

Second, in *Schmidt* this court rejected a critical finding of the district court. There the district court had concluded that further publicity would seriously traumatize one of the children involved. *Id.* at 435. In so doing, the district court relied on a psychiatrist's report that recommended "no media coverage of the trial." *Id.* On appeal, however, this court noted "a careful reading" of the report indicated that the children's anxiety was caused primarily by recurrent interrogation and removal from the home, and not publicity. *Id.* By contrast, in the present case, the district court cited evidence that Marcolina's involvement in publishing his children's names and photographs has adversely af-

---

2. At oral argument, Marcolina argued that the injunction prevents him from using the Internet to circulate the children's names and pictures in obviously private communications, such as to his family, and Geske agreed that the injunction could be modified to clarify that Marcolina is not enjoined from circulating the children's names and pictures on the Internet in private communications, but that he would be prohibited from circulating such information to the public at large, such as but not limited to, on a web site. Marcolina never expressed this concern at the district court level, and we see no reason why he would be prohibited from making an appropriate motion to the district court.

fected his children and harmed the reunification process, and we see no evidence in the record that compels us to draw factual findings different from those of the district court.

Marcolina cites *Minneapolis Star and Tribune Co. v. Lee*, 353 N.W.2d 213 (Minn. App.1984) for the proposition that a district court's motive to protect the child does not rise to the level required to justify prior restraint. Here, too, the differences between present case and the cited case are significant. First, in *Lee*, the injunction was directed to the media. *Id.* at 214. The trial judge stated,

> I can't stop people from talking about it but I am going to order that *nothing be printed* that has any reference to any of the juveniles involved or the juvenile involved or any of the issues that have been raised as a result of this proceeding.

*Id.* (emphasis added).

At the oral argument, the judge said that he intended the order to apply to all members of the press whether present at the hearing or not. *Id.* In the present case, as has been noted, the injunction does not restrict the media in any fashion.

Second, the reasons given by the judge in support of the order were a "concern for the child's welfare," *id.*, "to protect the child," *id.* at 215, and to "have a better relationship to the Houston County Social Services and the parties." *Id.* In contrast, the findings of the district court in the present case at not vague; they point out the specific harm that Marcolina's actions have caused the children.

■ Although Minnesota has not yet addressed the issue, several other states have noted that the best interests of children can be a compelling state interest justifying a prior restraint of a parent's right of free speech. *See, e.g. Schutz v.*

*Schutz,* 581 So.2d 1290, 1292–93 (Fla.1991) (order requiring mother to say positive things about father was in the best interests of the children and, at the very least, in furtherance of "substantial" state interest and not a violation of mother's First Amendment right to free expression); *Dickson v. Dickson,* 12 Wash.App. 183, 529 P.2d 476, 479 (1974) (father enjoined from saying that mother was still his wife and that she was insane; court recognized that such statements interfered with children's well being, and injunction was affirmed, as modified, against father's assertion of First Amendment rights); *cf. Stephanie L. v. Benjamin L.,* 158 Misc.2d 665, 602 N.Y.S.2d 80, 82–83 (N.Y.1993) (court noted that it has the power to enjoin parents from making statements to children that are not in their best interests, but declined to exercise that power to prohibit father from disclosing to child that her mother had cancer).

Accordingly, we conclude that the injunction, as modified, does not infringe on Marcolina's right to free speech.

### III.

■ Marcolina next argues that because the information was already in the public domain, he cannot be prohibited from disseminating it. Marcolina states that the information was "contained in an unsealed district court file." *Schmidt,* 360 N.W.2d at 435, citing a number of United States Supreme Court cases, holds that once information is in the public domain, its dissemination may not be enjoined. Since the children's names are in the court file, the district court's injunction must be modified so as not to prohibit Marcolina from disseminating their names, notwithstanding the harm future dissemination may cause his children.

Although it is clear that the children's names and ages are in the court file, it is

not clear whether their pictures are in the file. It would be expected that the names and ages of minor children would be in the file, as they must be pled in the petition. *Cf.* Minn.Stat. § 518.10(e) (1996). But it would be unusual for their pictures to be there. In his arguments to both the district court and this court, Marcolina does not differentiate between the children's names and ages on one hand and their pictures, on the other. Marcolina simply alleges that the "information" was in the file. At the hearing before this court, mother's counsel agreed that the children's names and ages were in the court file, but challenged the assertion that pictures were in the file. In response, father's counsel stated that the information was "already out there." Thus, it is not clear whether the children's pictures are in the file, and if so, under what circumstances they were filed. Perhaps because the question of what was in the file was not presented to the district court, the court did not make a finding on this question. Since the record on appeal does not establish that the children's pictures are in the court file and hence in the public domain, and on the basis of the district court's finding that Marcolina's use of the children's pictures was harmful to the children, we affirm the injunction insofar as it prohibits Marcolina's from disseminating the children's pictures in the media.

## IV.

■ Marcolina argues that the district court's award of fees under Minn.Stat. § 518.14 (2000) was improper. An award of attorney fees is a decision well within the district court's discretion and will not be disturbed absent a clear abuse of discretion. *Crosby v. Crosby,* 587 N.W.2d 292, 298 (Minn.App.1998), *review denied* (Minn. Feb. 18, 1999).

■ There are two bases for the award of attorney fees under Minn.Stat. § 518.14, subd. 1. First, attorney fees may be awarded on the basis of a party's need if the district court finds that (1) the fees are necessary for the good-faith assertion of the party's rights; (2) the party from whom fees, costs, and disbursements are sought has the means to pay them; and (3) the party to whom fees, costs, and disbursements are awarded does not have the means to pay them. *Id.* Alternatively, the district court may award attorney fees against a party who "unreasonably contributes to the length or expense of the proceeding." *Id.*

### Need–based Fees

■ Marcolina first argues that the underlying proceeding was not a good-faith assertion of rights. In making this argument, Marcolina seems to rely on the fact that no Minnesota law was found that explicitly supported Geske's requested relief. The lack of explicit law does not render her petition in bad faith.

■ Marcolina next argues that the information on which the district court based its findings with regard to the second and third elements was financial data from 1998 and 1999 and was therefore stale. But the district court took into account information concerning the parties' financial circumstances since the 1999 hearing. Moreover, the district court judge was familiar with the history of the case and the parties' financial circumstances, and it was proper for the court to take those facts into account. *See Gully v. Gully,* 599 N.W.2d 814, 826 (Minn.1999). We conclude that it was proper for the district court to award need-based fees.

### Conduct–based Fees

■ The district court alternatively awarded fees on the basis that Marcolina

may have acted in bad faith, caused further emotional difficulties for the children by divulging the girls' names and pictures on television for broadcast without notice to Geske, Geske's counsel, the Court, or any family therapist involved in the case, and then choosing to

undertake lengthy first amendment-based litigation on the question, not of his right to broadcast, discuss or disseminate information regarding his visitation case, but of his "right" to broadcast the names and faces of his children in the media.

In this connection, however, for the court to award attorney fees the conduct must be within the litigation; conduct not directly in the litigation process is not a basis for an award. *Geske v. Marcolina,* 624 N.W.2d 813, 819 (Minn.App.2001). It does not appear that Marcolina's conduct within the current injunction proceeding unreasonably contributed to the length or expense of the proceeding. Although Marcolina's conduct is not a basis for a fee award, the district court's award of fees based on Geske's need is within the court's discretion and is affirmed.

Geske has made a motion for attorney fees on appeal. The same analysis that the district court applied to her request for fees in district court applies to her request for fees on appeal. Geske's attorney has submitted an affidavit detailing $8,255 in attorney fees in connection with the present appeal. We take into account (1) the district court's findings and ruling on the issue of fees in the district court, and (2) the submissions of the parties to this court on the issue of fees on appeal. Based on the relative financial positions of the parties, pursuant to Minn.Stat. § 518.14, subd. 1, we make a needs-based award to Geske of $4,000 as attorney fees on appeal.

## DECISION

The district court's ruling issuing the injunction is modified to allow appellant to disseminate the names of his daughters in the media. In all other respects, the order of the district court is affirmed.

**Affirmed as modified; motion granted.**