In the Matter of WHILE YOU WAIT PHOTO CORP., Petitioner,
v DEPARTMENT OF CONSUMER AFFAIRS OF THE CITY OF
NEW YORK et al., Respondents.

First Department, May 25, 1982

APPEARANCES OF COUNSEL

*Harry Alexander* for petitioner.

*John W. Russel* of counsel (*Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondents.

**OPINION OF THE COURT**

MILONAS, J.

This case involves a transferred CPLR article 78 proceeding in which petitioner seeks to annul a determination by respondents, the Department of Consumer Affairs of the City of New York and Bruce C. Ratner as commissioner thereof, which imposed conditions upon the renewal of petitioner's license to conduct business.

For the past 27 years, petitioner While You Wait Photo Corporation (WYW), has operated an amusement arcade situated in an approach to the IND subway at 42nd Street and Eighth Avenue in New York County. The arcade,

which is one of several shops in that location, contains various machines, including pinball machines, designed for public amusement. During the period of its existence, WYW has never been denied renewal of its license nor been charged with violation of any statutes or rules and regulations.

Respondent is the municipal agency responsible for the regulation and licensing of "common show" amusement arcades (Administrative Code of City of New York, §§ 773-1.0, 773-4.0). Persons operating such arcades must be licensed to do business (Administrative Code, §§ B32-40.0, B32-41.0). On August 8, 1980, petitioner was served with a notice of hearing for the following purpose: "To show cause why renewal of the license of While You Wait Photo Corp., a common show amusement arcade located in the subway station at 8th Avenue and 42nd Street, should not be denied pursuant to Regulation 2 of the Rules and Regulations Relating to Common Shows, or, in the alternative, why the Commissioner should not limit the licensee's hours of operation and require the licensee to increase the number of security and supervisory personnel at the arcade pursuant to Regulation 4(a) of the Rules and Regulations Relating to Common Shows".

Although the notice of hearing did not allege any wrongful conduct on the part of WYW or its employees, it did assert that conditions in the general area of the arcade justified the relief being sought by the Department of Consumer Affairs. According to the notice of hearing, the situation was such: "That the mezzanine level of the subway station, on which the arcade is located, is the scene of substantial criminal activity, including drug sales, transactions in stolen goods, and prostitution. That a significant percentage of the arrests made on the mezzanine level take place in the arcade. That, on several weekend night occasions, transit police have asked the arcade's management to close the arcade because of severe crowding. That closing or restricting the hours of operation of the arcade will help reduce criminal activity on the mezzanine level."

The notice of hearing was based upon the complaint of both the midtown enforcement project, the municipal en-

tity attempting to "clean-up" the Times Square area, and the Department of Consumer Affairs. An administrative hearing was subsequently held, and various witnesses appeared. Those persons who testified on behalf of the complainants expressed their concern that by becoming a focal point for antisocial conduct, the location in question posed law enforcement problems. For example, Lieutenant Dettman, a member of the New York City Transit Police, referred to the occurrence of criminal activity near the arcade. However, he admitted that arrest records did not indicate precisely where in the area the arrests took place, or whether the arrests were made during the hours in which the arcade was open, or the disposition of the cases arising out of the arrests. Further, complaints which had been lodged as a result of purported incidents in the arcade had not resulted in arrests. It was also revealed that WYW had complied with requests from the transit police to close its premises for short periods of time.

Petitioner's position was presented through the testimony of its president, Charles Rubenstein, and his brother, Louis Rubenstein, an employee. They stated that the arcade is generally open between the hours of 8:00 A.M. and 2:00 A.M., although the closing time may be extended if business is good, that signs posted on the walls of the establishment prohibit patrons from entering with food or drinks, and that drunk and disorderly people are excluded from the premises. They denied ever seeing an arrest within the actual confines of the arcade. In addition, the operation is shut down whenever necessary in order to prevent overcrowding, and at least two employees are always on duty. Petitioner also agreed to erect a glass wall to separate the arcade from the passageway.

On January 22, 1981, the Department of Consumer Affairs notified WYW that its license would be renewed on condition that its hours of business were limited from 8:00 A.M. to midnight, Sunday through Thursday, and 8:00 A.M. to 2:00 A.M., Friday and Saturday. Respondents also recommended that an enclosure be erected in front of the arcade (which was, in fact, done) and informed petitioner of their intention to conduct an inspection within six months. However, after WYW requested that the agency reconsider

its earlier decision, respondents issued a modification by letter dated June 17, 1981 whereby the restrictions imposed on petitioner's operation were slightly eased in that the arcade could now be open from 8:00 A.M. to 2:00 A.M. on Sunday through Thursday and 8:00 A.M. to 3:00 A.M. on Fridays, Saturdays and holidays. In another letter dated May 29, 1981, WYW was advised that its pending license renewal application would not be processed until it supplied documentation of liability insurance coverage, the first time such a demand had ever been made.

Petitioner commenced the instant CPLR article 78 proceeding on May 22, 1981 (prior to the modification and the imposition of the insurance requirement), which was amended on July 30, 1981 to reflect the Department of Consumer Affairs subsequent rulings, and issue was joined on August 10, 1981. By order of January 5, 1982 (MARESCA, J.), the matter was transferred to this court. Petitioner, in seeking to review the administrative determination, contends that it was not supported by substantial evidence, that respondents acted beyond the scope of their authority and that the agency may not mandate liability insurance.

Department of Consumer Affairs asserts that its authority derives from section 773-1.0 of the Administrative Code of the City of New York, which provides that: "The council finds that for the protection and relief of the public from deceptive, unfair and unconscionable practices, for the maintenance of standards of integrity, honesty and fair dealing among persons and organizations engaging in licensed activities, *for the protection of the health and safety of the people of New York City and for other purposes requisite to promoting the general welfare,* licensing by the department of consumer affairs is a necessary and proper mode or regulation with respect to certain trades, businesses and industries. The council finds further that, *in order to secure the above-mentioned purposes, and generally to carry out responsibilities for supervising and regulating licensed activities, trades, businesses and industries, the commissioner of consumer affairs requires powers, remedies and sanctions which are equitable, flexible and efficient.* Finally, the council finds that sanctions and penalties applied by the commissioner and by the courts for the

violation of laws and regulations by individuals and organizations engaging in various licensed activities, trades, businesses and industries, must be sufficient to achieve these above-mentioned purposes of licensing." (Emphasis added.)

Respondents also cite subdivision a of section 773-4.0 of the Administrative Code to the effect that: "The commissioner shall have cognizance and control of the granting, issuance, transferring, renewal, denial, revocation, suspension and cancellation of all licenses issued under this chapter and under all other laws conferring such powers upon him."

The agency further refers to subdivision b of section 773-4.0 of the Administrative Code, which states that: "The commissioner shall, as he determines necessary and appropriate, promulgate, amend and rescind regulations and rules: 1. to carry out the powers and duties of the department * * * 6. with respect to licensed activities, to protect the health, safety, convenience and welfare of the general public".

The Department of Consumer Affairs also claims to act pursuant to regulations 2 and 4(a) of the Amended Rules and Regulations Relating to Common Shows, promulgated in accordance with the foregoing statutes and effective September 12, 1976.

In the view of the respondents, the New York City Council conferred upon the agency a broad power to consider the safety and general welfare of the public in connection with its licensing responsibilities. However, there is a clear distinction between consumer protection and ensuring that businesses engage in fair and lawful trade practices, which is what the applicable laws appear to contemplate (see, also, subdivision [a] of section 2203 of the City Charter, which expressly mentions consumer education and protection), and the type of activity which the agency is endeavoring to regulate through its supervision of licensing. In the instant situation, the Department of Consumer Affairs, in conjunction with the midtown enforcement project and the Transit Authority, is engaged in attempting to reduce crime by improving conditions for

persons entering and exiting the subway. While this is certainly a laudable purpose, it is not one which is within the scope of its prescribed duties, particularly since it is the City Planning Commission which is statutorily charged with deciding whether a particular enterprise is suited to the location involved (Administrative Code, § 200-2.0). Despite the fact that both the Department of Consumer Affairs and the City Planning Commission are responsible for promoting the public health, safety and general welfare, the former does so with respect to business practices and the latter in relation to the character or conditions of a neighborhood or area.

In *Matter of Bologno v O'Connell* (7 NY2d 155), the Court of Appeals held that denial of a license to petitioner to conduct business as a junk dealer was not proper where it was based on the alleged harm that this enterprise would have on the residential neighborhood. According to the court, the authority to provide for the health, safety and general welfare is not unlimited, and "[a]dministrative *discretion* must be guided by an express or clearly implied standard, policy or purpose" (*supra,* p 159). Since the history and purpose of the regulation of junk dealers was obviously to curtail the readily available market for stolen property, the delegated discretion had to be restricted to this aim. Referring to the power of the City Planning Commission to regulate the location of trades and industries, the court declared (p 160) that "[n]owhere in the sections before us is there any indication of an intention to bestow *conflicting* jurisdiction to these administrative bodies." "However salutary his [the commissioner's] ideas may be," concluded the court (p 161), "it is beyond the scope of his authority. He may not 'arbitrarily impose limitations not contained in the statute upon his [the applicant's] right to do business.'"

Although the evidence presented at the administrative hearing is not strongly probative of any criminal activity associated with the operation of petitioner's arcade (see *300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, as to a discussion on the meaning of "substantial evidence"), the agency's determination was without appropriate statutory authority and thus lacked a rational

basis. (*Matter of Pell v Board of Educ.*, 34 NY2d 222.) Similarly, respondents' demand for proof of liability insurance as a condition of the license renewal, in the absence of a statute imposing such a requirement, was unwarranted. The Department of Consumer Affairs relies on sections 773-1.0, 773-4.0 and 773-6.0 of the Administrative Code, but none of these provisions can be interpreted as providing support for the agency's position. In effect, respondents are exercising a legislative function, and this they are not permitted to do. (See *Acorn Employment Serv. v Moss,* 292 NY 147, for the proposition that refusing to issue a license except upon a condition not authorized by statute is arbitrary and capricious.)

Consequently, the determination of the Department of Consumer Affairs and the commissioner thereof, dated January 22, 1981 and modified June 17, 1981 and the determination dated May 29, 1981, which imposed conditions upon the renewal of petitioner's license to conduct business, should be annulled without costs and the petition granted.

SANDLER, J. P., SULLIVAN, MARKEWICH and FEIN, JJ., concur.

Determination of respondents dated January 22, 1981 and modified June 17, 1981, and the determination of respondents dated May 29, 1981, annulled without costs and without disbursements and the petition granted.