OPINION OF THE COURT
Peter H. Moulton, J.
Petitioner is a pedicab driver and owner who filed numerous proceedings, pro se, stemming from one incident where he received a violation in connection with his driver’s license (a) for picking up passengers in a restricted area in the Central Park Boathouse parking lot, and (b) for failing to have a copy of his driver information visible to passengers. Petitioner claims that his constitutional rights were violated, including his right to be free from unreasonable search and seizure, when his pedicab was searched by the Department of Parks and Recreation, in the presence of police officers who were called to the scene. Petitioner lost the agency hearing (at which he was represented by counsel), and the hearing officer imposed a total fine of $1,000 which was upheld by the Deputy Director of Adjudication (see decision and order dated Jan. 28, 2013). Petitioner also lost the agency appeal (see decision and order dated June 28, 2013).
At issue here is petitioner’s business license. The court will not address any argument regarding petitioner’s pedicab driver’s license (which was suspended) or the underlying violations. Those arguments were made (or should have been made) in motion sequence Nos. 001 and 003 which were severed and transferred by this court to the Appellate Division, First Department by decision and order, dated February 5, 2014 (Matter of Donmez v Department of Consumer Affairs, 2014 NY Slip Op 31726[U] [Sup Ct, NY County 2014] [the February decision]).
Respondents concede that petitioner submitted a timely application to renew his business license on October 31, 2013.[1] However, the Department of Consumer Affairs (the agency) asserts that on that day, it informed petitioner that he had to pay the $1,000 fine in order to renew his business license. By letter dated November 1, 2013, petitioner demanded explanations from the agency and a hearing and defiantly stated that he would “NEVER pay DCA $1,000 ... I will NOT obey” in light of what he considered arbitrary and unconstitutional practices. By letter dated November 6, 2013, Sanford Cohen informed petitioner that
*697 “your application to renew License No. 1436620 is denied (a) pursuant to section 20-104 (e) (3) of the Administrative Code of the City of New York and (b) pursuant to section 20-101 of the Code on the ground that you lack the honesty and integrity required of all persons who hold a license issued by the Department” (the Cohen letter).[2]
Arguments
In motion sequence No. 002, petitioner moved by order to show cause “asking the court to grant a conditional pedicab business license.” In his verified petition, dated November 1, 2013, petitioner contends that respondents violate due process by not “offering hearings for the denials of the renewal of pedicab business licenses.” He asserts that he should not be penalized as a pedicab owner for his failure to pay the $1,000 fine issued to him under his pedicab driver’s license. There is a distinction between a person and property, he argues. By declining to renew his owner’s license for failure to pay fines as a driver, the agency is “telling someone he cannot own a car because he does not have a driver’s license.” Petitioner notes that the agency did not suspend his business license simultaneously with suspension of his driver’s license as a result of his failure to pay the $1,000 fine.
Respondents oppose motion sequence No. 002 on the basis that petitioner failed to demonstrate that he has a property interest in his business license (see respondents’ verified answer ¶ 241; respondents’ mem of law at 24-26).[3] Further, petitioner is not entitled to a hearing regarding the agency’s refusal to renew his business license because Administrative Code of the City of New York § 20-104 (e) (3) does not provide for a hearing. Administrative Code § 20-104 (e) (3), respondents argue, should be compared to Administrative Code § 20-261 (a), which specifies that a hearing must be held prior to revoking a business license for instances which are inapplicable (see respondents’ *698 mem of law at 24). Additionally, petitioner is not entitled to renewal of his business license because he lacks “honesty and integrity” given his defiant statements that he would not pay the $1,000 fine (discussed below).
In motion sequence No. 004, petitioner seeks an order granting “the restoration of petitioner’s . . . pedicab business license . . . upon the payment of $1,000; the amount imposed by DCA with its June 28, 2013 final determination.” He attaches a check made out to the agency for $1,000 from a third party.[4] In his affidavit in support, he states that the license is a “crucial source of income for himself and his family.” He further highlights that he does not pose a threat to the public and has a near perfect record.
Respondents oppose motion sequence No. 004 on the basis that petitioner’s request is not ripe for review because petitioner has not received a final agency determination, because he has not paid the $1,000 fine.[5] They contend “once he does, DCA will then arrive at a definitive position, entirely within its lawful discretion, to restore or renew.” Respondents further contend that petitioner has not shown a clear legal right to the relief sought, and, has not met the standards for a preliminary injunction.
Discussion
Motion sequence Nos. 002 and 004 are consolidated for disposition. Petitioner’s application is ripe for judicial review. It is incorrect for the agency to claim that petitioner has not received a final determination in light of the Cohen letter concluding that “your application to renew License No. 1436620 is denied.” Further, even if this were not the case, the agency has cited regulations which indicate that petitioner’s application would be treated as a new application because it would be made outside of the 59-day grace period.[6] Thus, even assuming the agency would permit renewal of the business license, the renewal would *699 not be on the same terms and conditions as if it was granted prior to the expiration of the grace period. Thus, the court will reach the question of whether it was arbitrary and capricious or in violation of law for the agency to decline to renew his business license for the reasons cited in the Cohen letter.
For the reasons discussed below, the agency’s demand for payment of the $1,000 fíne, as a condition of the business license renewal, was in excess of its authority (see Matter of While You Wait Photo Corp. v Department of Consumer Affairs of City of N.Y., 87 AD2d 46, 52 [1st Dept 1982] [respondents’ demand for “proof of liability insurance as a condition of the license renewal, in the absence of a statute imposing such a requirement, was unwarranted . . . The Department of Consumer Affairs relies on sections ... of the Administrative Code, but none of these provisions can be interpreted as providing support for the agency’s position. In effect, respondents are exercising a legislative function, and this they are not permitted to do”]). The plain language of a legislative enactment, discussed below, does not support such a unilateral ruling and must be annulled (see Matter of New York City Pedicab Owners’ Assn., Inc. v New York City Dept. of Consumer Affairs, 61 AD3d 558 [1st Dept 2009] [DCA exceeded its authority under the enabling legislation by interpreting its regulation at odds with the plain language of the statute]).
Administrative Code § 20-101
Citing Administrative Code § 20-101, respondents maintain that petitioner lacks the honesty and integrity necessary for renewal of his business license as a result of petitioner’s refusal to pay the $1,000 fine assessed in connection with his driver’s license. This section, which is entitled “Legislative intent,” provides in relevant part that agency licensing is necessary *700 Respondents cite no cases to support the contention that petitioner’s defiance implicates honesty and integrity, especially where petitioner’s defiance is partially based on his concern that any payment would “moot out” his opportunity to vindicate his constitutional rights (see Donmez aff in support ¶ 38).[7] Moreover, a determination that a licensee lacks honesty and integrity is typically found where the licensee has violated a separate statutory provision or regulation (see e.g. Matter of v & A Towing v City of New York, 197 AD2d 386 [1st Dept 1993] [towing company lacked honesty and integrity because it violated Administrative Code § 20-509 by overcharging vehicle owners]; Matter of Dolinsky v Department of Consumer Affairs, 125 AD2d 256 [1st Dept 1986] [suspension of process server’s license for numerous violations of regulations including filing false affidavits]). Here, that separate provision is Administrative Code § 20-104 (e) (3). However, for the reasons discussed below, that provision does not support the agency’s refusal to renew petitioner’s business license, based on unpaid fines assessed under petitioner’s pedicab driver’s license.
*699 “for the protection and relief of the public from deceptive, unfair and unconscionable practices, for the maintenance of standards of integrity, honesty and fair dealing among persons and organizations engaging in licensed activities, for the protection of health and safety of the people of New York city and for other purposes requisite to promoting the general welfare.”
*700 Administrative Code § 20-104 (e) (3)
Administrative Code § 20-104 (e) (3), which concerns the commissioner’s powers with respect to license enforcement for all licensed activities, provides in relevant part that “[t]he commissioner or the commissioner’s designee shall be authorized to suspend the license of any person pending payment of such fine or civil penalty or pending compliance with any other lawful order of the department.” Pursuant to a request for further briefing, the agency explained by email dated June 2, 2014 that “the Department has reasonably construed its statutory authority under Section 20-104 (e) (3) to ‘suspend the license of any person’ pending compliance with a lawful order to include ‘the suspension of any other [DCA] license(s) held’ by that licensee.”[8]
*701 While the language regarding suspension of the license pending compliance with “any” lawful order of the Department is broad, it must be read to cover instances where the lack of compliance with an agency order is not based on the failure to pay a fine. Meaning and effect must be given to all of the statute’s language, and words are not to be rejected as superfluous when it is practicable to give each a distinct and separate meaning (see McKinney’s Cons Laws of NY, Book 1, Statutes §231). Language is construed according to its natural and most obvious sense {id. § 94). Respondents’ interpretation, which reads compliance with its orders to include the failure to pay a fine or penalty, renders superfluous the statute’s language regarding suspension of “the license of any person pending payment of such fine or civil penalty.” (Administrative Code § 20-104 [e] [3].)
Thus, the issue is whether respondents’ determination may be based on petitioner’s failure to pay “such fine or civil penalty.” Administrative Code § 20-104 (e) (3), however, ties the fine or penalty to the particular license under which that fine or penalty is issued. This is evident because the agency cannot suspend “any license” but rather can suspend “the license.” This is further evident because the fine or penalty is referred to as “such” fine or penalty, which can only assessed after a hearing {see Administrative Code § 20-104 [e] [1]). Notably, Administrative Code § 20-104 (e) (3) was already the basis for the suspension of petitioner’s driver’s license. Accordingly, the agency has wielded a hammer which was not provided under the statute.[9]
Moreover, Administrative Code § 20-104 (e) (3), by its terms, relates only to a suspension of a license. Nothing in Administrative Code § 20-104 (e) (3) indicates that it applies to a renewal of a pedicab business license. Nor have respondents cited any provision which would permit them to refuse to renew a pedicab *702 business license based on the grounds used to suspend a license under Administrative Code § 20-104 (e) (3).[10]
The court’s reading is also supported by a review of Administrative Code §§ 20-257 (g) and 20-259 (h), which relate specifically to pedicab drivers violations. Administrative Code § 20-257 (g) provides in relevant part:
“g. Service of a violation, and any related notices, on a pedicab driver shall constitute service on the pedicab business that authorized the operation of such pedicab by virtue of employment, lease, or any other arrangement and shall afford the pedicab business the opportunity to participate in any hearing held on such violation.”
Administrative Code § 20-259 (h) provides in relevant part:
“A pedicab business shall . . . require such drivers to provide a copy of any summons, complaint, or notice of violation of any law or regulation received while operating a pedicab to such pedicab business, as well as a copy of the disposition of such summons, complaint or notice of violation of such pedicab business, within five business days of such drivers’ receipt of such documents.”
All parts of a statute are to be construed as a whole and read together to determine legislative intent (see McKinney’s Cons Laws of NY, Book 1, Statutes § 97). A court cannot supply in a statute something which is reasonable to presume was intentionally omitted (id. § 74). As reflected above, the legislature has obligated a pedicab owner to require that its drivers provide the owner with copies of the driver’s violations, and has specified that service on the driver constitutes service on the owner, and an opportunity to participate in any hearing. However, despite addressing driver’s violations in detail, the City has not placed an obligation on the owner to make payment for those violations. The fact that the legislature saw fit to place certain obligations on an owner, but not others, indicates that the City did not intend to hold an owner responsible for fines incurred by a *703 driver, even when the business is operated by the same individual who is the driver.
In sum, respondents exceed their authority by interpreting Administrative Code §§ 20-101 and 20-104 (e) (3) in a manner not supported by their plain language. The City has not bestowed the agency with the power to decline to renew a pedicab business license based on the owner’s failure to pay fines assessed in connection with a pedicab driver’s license. Neither agency deference nor liberal construction can provide the basis for the agency to exceed its statutory authority.
It is hereby adjudged that the petition is granted to the extent that the agency’s decision to deny petitioner’s application to renew license No. 1436620 based on Administrative Code §§ 20-101 and 20-104 (e) (3) is in violation of law because such determination is in excess of the agency’s powers, and it is further ordered that the agency’s determination to deny petitioner a renewal of his business license is annulled and the matter is remitted to the agency which is directed to complete the processing of petitioner’s application for renewal of his business license on an expedited basis.

. Business licenses must be renewed before November 1 of each year (see 6 RCNY 1-02 [f]).

. The parties signed a stipulation dated February 25, 2014 staying the agency’s disposition of petitioner’s registration plates pending this court’s decision.

. Given the numerous applications filed, the court did not require the parties to brief the issues beyond the papers previously submitted in connection with the February decision. However, the bulk of those arguments are not at issue here. Only those arguments related to the business license are considered herein. The reference in the February decision to “petitioner’s licenses” in the paragraph immediately preceding the ORDERED paragraphs is amended to read “petitioner’s business license.”

. Petitioner has consistently maintained that he could not afford to pay the $1,000 fine. Presumably someone else has agreed to pay the fine on his behalf.

. At oral argument on June 3, 2014, the parties informed the court that petitioner’s pedicab driver’s license was restored upon petitioner’s payment of $1,000.

. If the business license is not renewed by November 1, the pedicab registration plates issued to the licensee become void (6 RCNY 2-421 [a]). There is, however, a 59-day grace period to reapply to renew the license and the plates (6 RCNY 1-09, 2-421 [b]). If renewal is sought on the 60th day or *699 thereafter, the agency treats the application as a new application (6 RCNY 1-09). This is problematic for petitioner because new applicants must wait for either an approved transfer of a plate from another business, or, a lottery distribution of a revoked or surrendered plate (6 RCNY 2-426a [e]).

. A recent appellate decision may lend some support for petitioner’s quest for vindication (see Matter of Karakus v New York City Dept. of Consumer Affairs, 114 AD3d 422 [1st Dept 2014] [officers’ conduct in selecting a pedicab for an on-the-spot inspection was not reasonable within the meaning of the Fourth Amendment and article I, § 12 of the New York Constitution because it was not pursuant to a uniform procedure or subject to any objective standard]).

. The agency further cites Administrative Code § 20-103 which provides that the “provisions of this chapter and chapter two of this title shall be liberally construed” and Administrative Code § 20-101 which provides the agency with “powers, remedies and sanctions” that are “flexible and efficient.”

. Statutes should be construed in a manner which will not work a hardship or injustice (see McKinney’s Cons Laws of NY, Book 1, Statutes § 146). The agency’s position results in a (perhaps unintended) hardship. The agency eventually restored petitioner’s driver’s license, based on his payment of the $1,000 fine. Yet, despite payment, it appears that the agency could not immediately restore petitioner’s business license. Because payment was made outside of the 59-day grace period, it appears that petitioner would have to wait for an approved transfer of a plate from another business or a lottery distribution of a revoked or surrendered plate, which could take years if it occurs at all.

. Administrative Code § 20-252 (c) which is contained in a specific subchapter entitled “Pedicabs” (subch 9) provides that the commissioner may refuse to “renew a pedicab business license to a pedicab [business] owner based upon a determination that such applicant has engaged in conduct [which] would constitute a basis for license suspension or revocation as set forth in subdivision a of section 20-261 of this subchapter.” However, respondents do not claim that petitioner violated Administrative Code § 20-261.